Timothy J. Conway, OSB No. 851752 (Lead Attorney)
    Direct Dial:  (503) 802-2027
    Facsimile:    (503) 972-3727
    Email:        tim.conway@tonkon.com
Ava L. Schoen, OSB No. 044072
    Direct Dial:  (503) 802-2143
    Facsimile:    (503) 972-3843
    Email:        ava.schoen@tonkon.com
TONKON TORP LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

    Attorneys for B. & J. Property Investments, Inc.

Nicholas J. Henderson, OSB No. 074027
    Telephone:  (503) 417-0508
    Facsimile:  (503) 417-0528
    Email:      nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204

    Attorneys for William J. Berman

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 19-60138-pcm11 |
| B. & J. Property Investments, Inc., | |
| Debtor. | |
| In re | Case No. 19-60230-pcm11 |
| William J. Berman, | **DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (~~JULY 15~~OCTOBER 8, 2019)** |
| Debtor | |

DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (~~JULY 15~~OCTOBER 8, 2019)

TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY ................................................................. 1

    A.    Introduction ................................................................................. 1
    B.    Summary of the Plan .................................................................. 3
            1.    General ............................................................................ 3
            2.    Secured Creditors .......................................................... 4
            3.    General Unsecured Creditors .......................................... 4
            4.    Class Action Creditors .................................................... 5
            5.    Equity Interests ............................................................... 6
            6.    Leases and Executory Contracts ..................................... 6
            7.    Effective Date ................................................................. 6
            8.    Cramdown Election ......................................................... 6
    C.    Brief Explanation of Chapter 11 ............................................... 6

II. VOTING PROCEDURES AND CONFIRMATION OF PLAN ........................ 7

    A.    Ballots and Voting Deadline ...................................................... 7
    B.    Parties Entitled to Vote .............................................................. 9
    C.    Votes Required for Class Acceptance of the Plan ..................... 10
    D.    "CramDown" of the Plan ......................................................... 10
    E.    Confirmation Hearing .............................................................. 11

III. COMPANY BACKGROUND AND GENERAL INFORMATION .................... 11

    A.    Debtors ..................................................................................... 11
    B.    Debtors' Business ..................................................................... 12
    C.    Management of B. & J. ............................................................ 13
    D.    Marion County Litigation ......................................................... 13
    E.    Electrical Billing at the RV Park .............................................. 14

IV. EVENTS LEADING TO THE BANKRUPTCY FILING ............................... 16

V. SIGNIFICANT POST-PETITION EVENTS .................................................. 17

    A.    Cash Collateral ......................................................................... 17
    B.    Rejection of Commercial Lease ................................................ 17
    C.    Relief From Stay ...................................................................... 17
    D.    Employment of Professionals ................................................... 18

VI. ASSETS AND LIABILITIES ........................................................................ 19

    A.    Assets ....................................................................................... 19
            1.    B. & J.'s Real Property .................................................. 19
            2.    Berman's Real Property .................................................. 20
            3.    Personal Property ........................................................... 20
    B.    Liabilities ................................................................................. 22
            1.    Columbia Credit Union .................................................. 22
            2.    Marion County Case Claim ............................................ 22

Page i of iiiv - DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (JULY 15 OCTOBER 8, 2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

                    3.      Unsecured Creditors.................................................................23
VII.    DESCRIPTION OF PLAN.......................................................................23

        A.      Brief Explanation of Chapter 11................................................23
        B.      Solicitation, Classification, and Treatment of Claims and Equity Securities...24
                1.      General...........................................................................24
                2.      Unclassified Claims.......................................................24
                3.      Classified Claims..........................................................26
        C.      Administrative Expenses............................................................29
        D.      Executory Contracts...................................................................30
        E.      Effect of Confirmation................................................................31
                1.      Binding Effect................................................................31
                2.      Revesting, Operation of Business...................................31
                3.      Injunction.......................................................................31
                4.      Event of Default.............................................................32
                5.      Modification of Plan; Revocation or Withdrawal of Plan .....32
                6.      Retention of Jurisdiction................................................33
                7.      United States Trustee Fees.............................................33

VIII.   LIQUIDATION ANALYSIS....................................................................34

IX.     POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ...35

        A.      Tax Consequences to Debtors......................................................36
        B.      General Tax Consequences on Creditors.....................................36

X.      ACCEPTANCE AND CONFIRMATION OF THE PLAN...........................37

        A.      Confirmation Hearing.................................................................37
        B.      Requirements of Confirmation....................................................37
        C.      Cramdown.....................................................................................38
        D.      Feasibility.....................................................................................38
        E.      Confirmation Requirements for Individual Debtor ......................39
        F.      Alternatives to Confirmation of the Plan....................................39

XI.     CONCLUSION.......................................................................................40

I.      INTRODUCTION AND SUMMARY ......................................................1

        A.      Introduction...................................................................................1
        B.      Summary of the Plan.....................................................................3
                1.      General.............................................................................3
                2.      Secured Creditors............................................................4
                3.      General Unsecured Creditors...........................................4
                4.      Class Action Creditors.....................................................5
                5.      Equity Interests................................................................6
                6.      Leases and Executory Contracts......................................6
                7.      Effective Date...................................................................6
                8.      Cramdown Election...........................................................6
        C.      Brief Explanation of Chapter 11..................................................6

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

II.     VOTING PROCEDURES AND CONFIRMATION OF PLAN ...............................7

    A.    Ballots and Voting Deadline.................................................................7
    B.    Parties Entitled to Vote........................................................................9
    C.    Votes Required for Class Acceptance of the Plan ...............................10
    D.    "CramDown" of the Plan ...................................................................10
    E.    Confirmation Hearing ........................................................................11

III.    COMPANY BACKGROUND AND GENERAL INFORMATION ........................11

    A.    Debtors ...............................................................................................11
    B.    Debtors' Business ..............................................................................12
    C.    Management of B. & J. .......................................................................13
    D.    Marion County Litigation ..................................................................13
    E.    Electrical Billing at the RV Park .......................................................14

IV.    EVENTS LEADING TO THE BANKRUPTCY FILING ................................16

V.    SIGNIFICANT POST-PETITION EVENTS ..................................................17

    A.    Cash Collateral...................................................................................17
    B.    Rejection of Commercial Lease ........................................................17
    C.    Relief From Stay ................................................................................17
    D.    Employment of Professionals ............................................................18

VI.    ASSETS AND LIABILITIES .......................................................................19

    A.    Assets .................................................................................................19
        1.    B. & J.'s Real Property ...........................................19
        2.    Berman's Real Property ...........................................20
        3.    Personal Property ....................................................20
    B.    Liabilities ...........................................................................................22
        1.    Columbia Credit Union ............................................22
        2.    Marion County Case Claim ......................................22
        3.    Unsecured Creditors ................................................23

VII.    DESCRIPTION OF PLAN ............................................................................23

    A.    Brief Explanation of Chapter 11 .......................................................23
    B.    Solicitation, Classification, and Treatment of Claims and Equity Securities ...24
        1.    General ....................................................................24
        2.    Unclassified Claims ................................................24
        3.    Classified Claims ....................................................26
    C.    Administrative Expenses ....................................................................29
    D.    Executory Contracts ...........................................................................30
    E.    Effect of Confirmation ......................................................................31
        1.    Binding Effect ........................................................31
        2.    Revesting, Operation of Business ...........................31
        3.    Injunction ...............................................................31
        4.    Event of Default ......................................................32
        5.    Modification of Plan; Revocation or Withdrawal of Plan ...............32

**Page iii of ~~iii~~iv** - DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (~~JULY 15~~ OCTOBER 8, 2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

|  |  |  |
|---|---|---|
| | 6. Retention of Jurisdiction | 33 |
| | 7. United States Trustee Fees | 33 |
| VIII. | LIQUIDATION ANALYSIS | 34 |
| IX. | POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | 35 |
| | A. Tax Consequences to Debtors | 36 |
| | B. General Tax Consequences on Creditors | 36 |
| X. | ACCEPTANCE AND CONFIRMATION OF THE PLAN | 37 |
| | A. Confirmation Hearing | 37 |
| | B. Requirements of Confirmation | 37 |
| | C. Cramdown | 38 |
| | D. Feasibility | 38 |
| | E. Confirmation Requirements for Individual Debtor | 39 |
| | F. Alternatives to Confirmation of the Plan | 39 |
| XI. | CONCLUSION | 40 |

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11 Doc 246 Filed 10/09/19

1    **I.     INTRODUCTION AND SUMMARY**

2          **A.     INTRODUCTION**

3          On January 17, 2019 (the "B. & J. Petition Date"), B. & J. Property Investments, Inc.

4    ("B & J," or the "Company") filed a voluntary petition under Chapter 11 of Title 11 of the

5    United States Bankruptcy Code (the "Bankruptcy Code").  On January 28, 2019 (the

6    "Berman Petition Date"), William J. Berman ("Berman") filed a voluntary petition under

7    Chapter 11 of the Bankruptcy Code.  On July 15, 2019, the Company and Berman

8    (collectively, "Debtors") filed this Disclosure Statement (the "Disclosure Statement") with

9    the U.S. Bankruptcy Court for the District of Oregon (the "Bankruptcy Court") and their

10   Joint Plan of Reorganization (the "Plan").  A copy of the Plan is included herewith.

11         This Disclosure Statement is being provided to you by Debtors to enable you to make

12   an informed judgment about the Plan.  This Disclosure Statement has been prepared to

13   disclose information that in Debtors' opinion is material, important, and helpful to evaluate

14   the Plan.  Among other things, this Disclosure Statement describes the manner in which

15   Claims and Equity Securities will be treated.  This Disclosure Statement summarizes the

16   Plan, explains how the Plan will be implemented, outlines the risks of and alternatives to the

17   Plan, and outlines the procedures involved in confirmation of the Plan.  The description of

18   the Plan contained in this Disclosure Statement is intended as a summary only and is

19   qualified in its entirety by reference to the Plan itself.  If any inconsistency exists between the

20   Plan and this Disclosure Statement, the terms of the Plan shall control.  You are urged to

21   review the Plan and, if applicable, consult with your own counsel about the Plan and its

22   impact on your legal rights before voting on the Plan.

23         Capitalized terms used but not defined in this Disclosure Statement shall have the

24   meanings assigned to such terms in the Plan or the Bankruptcy Code.  Factual information

25   contained in this Disclosure Statement is the representation of Debtors only and not of their

26   attorneys, consultants, or accountants.  The information has been obtained from the books

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

and records of Debtors as well as other sources deemed reliable.  Debtors have prepared the

information contained herein in good faith, based on information available to Debtors.  The

information herein has not been subject to a verified audit.  No representation concerning

Debtors or the Plan is authorized by Debtors other than as set forth in this Disclosure

Statement.

The statements contained in this Disclosure Statement are made as of the date hereof

unless another time is specified herein and the delivery of this Disclosure Statement shall not

imply that there has been no change in the facts set forth herein since the date of this

Disclosure Statement and the date the material relied on in preparation of this Disclosure

Statement was compiled.

This Disclosure Statement may not be relied on for any purpose other than to

determine how to vote on the Plan.  Nothing contained herein shall constitute an admission of

any fact or liability by any party, or be admissible in any proceeding involving Debtors or

any other party, or be deemed advice on the tax or other legal effects of the Plan on the

holders of Claims or Equity Securities.

This Disclosure Statement has been approved by Order of the Bankruptcy Court as

containing information of a kind and in sufficient detail to enable a hypothetical reasonable

investor typical of holders of Claims or Equity Securities of relevant classes to make an

informed judgment concerning the Plan.  The Bankruptcy Court's approval of this Disclosure

Statement, however, does not constitute a recommendation by the Bankruptcy Court either

for or against the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to

commence on _____, 2019 at _____ Pacific time.  That hearing will be held at

the U.S. Bankruptcy Court for the District of Oregon, 1050 SW Sixth Ave.,

Courtroom _____, Portland, Oregon 97204, before the Honorable _____.

The hearing on confirmation may be adjourned from time to time by the Bankruptcy Court

1  without further notice except for an announcement made at the hearing on any adjournment

2  thereof.

3       A ballot has been enclosed with this Disclosure Statement for use in voting on the

4  Plan.  In order to be tabulated for purposes of determining whether the Plan has been

5  accepted or rejected, ballots must be <u>received</u> at the address indicated on the ballot no later

6  than 4:00 p.m. on _____, 2019.  Debtors believe that confirmation of the Plan is in the

7  best interests of the holders of Claims and urge you to accept the Plan.

8       This Disclosure Statement contains projected financial information and estimates that

9  demonstrate the feasibility of the Plan of Reorganization and Debtors' ability to continue

10  operations upon emergence from proceedings under the Bankruptcy Code.  Debtors prepared

11  such information for the limited purpose of furnishing information to Creditors to allow them

12  to make an informed judgment regarding acceptance of the Plan of Reorganization.  The

13  projections and estimates of value should not be regarded for the purpose of this Disclosure

14  Statement as representations or warranties by Debtors as to the accuracy of such information

15  or that any such projections or valuations will be realized.  Actual results could vary

16  significantly from these projections.

17       **B.     SUMMARY OF THE PLAN**

18       A copy of the Plan is attached and discussed in detail later in this Disclosure

19  Statement.  The following description of the Plan is intended as a summary only and is

20  qualified in its entirety by reference to the Plan.  Debtors urge each holder of a Claim to

21  carefully review the entire Plan, together with this Disclosure Statement, before voting on the

22  Plan.

23       **1.     General**

24       Generally, the Plan provides that (a) Debtors will operate in the ordinary course and

25  pay and satisfy their obligations from revenue generated by operations; and (b) Debtors shall

26  seek to prevail on the appeal in the Class Action Case so they may pay all Creditors in full

over time; or (c) if Debtors are unable to prevail, or at least substantially prevail on the appeal, (i) B. ~~& J. will~~<u>& J. will pursue its malpractice claim against Saalfeld Griggs and if insufficient funds are recovered, B. & J. will then seek to refinance or</u> sell the Real Property and liquidate its assets, with the Net Proceeds to be distributed pro rata to Unsecured Creditors; and (ii) Berman will distribute to unsecured creditors all the projected disposable income he believes he will receive during the five-year period after the Effective Date.

## 2. Secured Creditors

Reorganized B. & J.'s secured Creditor, Columbia Credit Union ("Columbia"), will be paid the full amount of its Allowed Secured Claim in accordance with the existing terms of its loan to B. & J., except as modified under the Plan with respect to certain loan terms and covenants set forth in the Plan. The payments to Columbia will be approximately $14,080 per month.

Reorganized Berman's secured Creditor, Quicken Loans, Inc. ("Quicken Loans"), will be paid the full amount of its Allowed Secured Claim in accordance with the existing terms of its loan to Berman. Berman's payments to Quicken Loans will be approximately $2,852 per month.

## 3. General Unsecured Creditors

~~Reorganized B.~~<u>If B. & J. prevails on the appeal of the Class Action Case, B.</u> & J.'s General Unsecured Creditors will be paid in full, together with interest at the federal judgment rate in effect on the Effective Date~~, from and after the Effective Date, as follows: Commencing.__  If B. & J. does not prevail~~ on the ~~first day~~<u>appeal</u> of the ~~first month following the Effective Date,__</u> <u>Class Action Case, and there are insufficient funds from a refinancing or liquidation of the malpractice claims, then</u> General Unsecured Creditors will be paid ~~interest only for~~<u>pro rata from the sale and liquidation of B. & J.'s assets on a pro rata basis with</u> the ~~first 12 payments, then the full balance of their claims in equal amortizing monthly~~

Page 4 of 41 - DEBTORS' <u>AMENDED</u> JOINT DISCLOSURE STATEMENT (~~JULY 15~~ <u>OCTOBER 8</u>, 2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

1 payments, including principal and interest at the federal judgment rate, for the next
2 36 monthsClass Action Claims.
3          To the extent not paid by B. & J., Reorganized Berman's General Unsecured
4 Creditors and Class Action Creditors (discussed below) shall be paid their pro rata share of
5 $60,000, which is Berman's projected disposable income for the five-year period following
6 the Effective Date.  See **Exhibit 3**, attached hereto.

7          **4.          Class Action Creditors**

8          Certain Creditors in the Marion County Case (the "Class Action Claims") were
9 awarded a General Judgment in the total amount of $4,864,951 against Debtors on
10 October 31, 2018, which Debtors have appealed.  If the Class If the Class Action Claims are
11 denied on appeal, they will receive nothing.  If the Class Action Claims are allowed and
12 prevail on appeal, then such Allowed Claims will be paid in full if B. & J. has sufficient
13 funds to do so once the appeals have concluded, or B. & J. will liquidate its assets and pay
14 the Class Action Creditors pro rata from the Net Proceeds of the liquidation.  If Class Action
15 Creditors from available funds.  B. & J. plans to file an adversary proceeding under 11
16 USC § 547 avoiding the judgment lien obtained by the Class Action Claimants as a
17 bankruptcy preference.  If the B. & J. preference claim is successful, the Class Action Claims
18 will be Unsecured Claims even if Allowed.  If the preference claim is not successful and the
19 Class Action plaintiffs prevail on the appeal, they would have a Secured Claim against the
20 Real Property up to the value of the Real Property in excess of prior liens.  If Class Action
21 Claims are paid in full and entitled to interest, they shall receive interest at the federal
22 judgment rate.  To the extent the Allowed Class Action Creditors are not paid in full by
23 B. & J., they shall receive payment from Berman in the amount of their pro rata share of
24 $60,000.
25
26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

**5.     Equity Interests**

The Plan provides that existing equity interests in B. & J. will be left in place unless the Company is liquidated, in which case equity will be extinguished.

The Plan provides that Berman will retain his interests in assets of his bankruptcy estate.

**6.     Leases and Executory Contracts**

All unexpired leases and executory contracts will be assumed by the respective Debtors through the Plan unless such unexpired leases and executory contracts have previously been assumed and assigned or rejected, or a motion seeking their assumption or rejection has been filed before the Confirmation Date.

**7.     Effective Date**

The Effective Date of the Plan shall be the 11th day following entry of the Confirmation Order.

**8.     Cramdown Election**

In the event any Class does not accept the Plan, Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise modify the Plan.

**C.     BRIEF EXPLANATION OF CHAPTER 11**

Chapter 11 is the principal reorganization provision of the Bankruptcy Code. Pursuant to Chapter 11, a debtor attempts to reorganize its business for the benefit of the debtor, its creditors, and other parties-in-interest.

The formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case. A plan of reorganization sets forth the method for compensating the holders of claims and interests in Debtor. If the plan is confirmed by the Bankruptcy Court, it will be binding on Debtors, their creditors, and all other parties-in-interest. A claim or interest is impaired under a plan of reorganization if the plan provides that the legal,

**Page 6 of 41 -**     DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (JULY 15 OCTOBER 8, 2019)

equitable, or contractual rights of the holder of such claim or interest are altered.  A holder of

an impaired claim or interest is entitled to vote to accept or reject the plan.  Chapter 11 does

not require all holders of claims and interests to vote in favor of a plan in order for the

Bankruptcy Court to confirm it.  However, the Bankruptcy Court must find that the plan

meets a number of statutory tests before it may approve the plan.  These tests are designed to

protect the interests of holders of claims or interests who do not vote to accept the plan, but

who will nonetheless be bound by the plan's provisions if it is confirmed by the Bankruptcy

Court.

An Unsecured Creditors' Committee was not appointed by the U.S. Trustee's office

in this case pursuant to 11 U.S.C. §§ 1102(a) and (b).

## II.     VOTING PROCEDURES AND CONFIRMATION OF PLAN

### A.     BALLOTS AND VOTING DEADLINE

A ballot to be used for voting to accept or reject the Plan is enclosed with each copy

of this Disclosure Statement.  After carefully reviewing this Disclosure Statement and its

exhibits, including the Plan, please indicate your acceptance or rejection of the Plan by

voting in favor or against the Plan on the enclosed ballot as directed below.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for

the acceptance or rejection of the Plan must be received by Debtors no later than 4:00 p.m.

Pacific time on _____, 2019 at the following address:

> Tonkon Torp LLP
> Attention:  Spencer Fisher
> 1600 Pioneer Tower
> 888 SW Fifth Avenue
> Portland, OR  97204-2099

or via facsimile transmission to Spencer Fisher at (503) 972-3867.

Holders of each Claim scheduled by Debtors or with respect to which a Proof of

Claim has been filed will receive ballots and are permitted to vote based on the amount of the

Proof of Claim, except as discussed below.  If no Proof of Claim has been filed, then the vote

**Page 7 of 41** -     DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (JULY 15
OCTOBER 8, 2019)

will be based on the amount scheduled by Debtors in their Schedules.  The Bankruptcy Code

provides that such votes will be counted unless the Claim has been disputed, disallowed,

disqualified, or suspended prior to computation of the vote on the Plan.  A Claim to which an

objection has been filed is not allowed to vote unless and until the Bankruptcy Court rules on

the objection.  Holders of disputed Claims who have settled their dispute with Debtors are

entitled to vote the settled amount of their Claim.  The Bankruptcy Code and rules provide

that the Bankruptcy Court may, if timely requested to do so by the holder of such Claim,

estimate or temporarily allow a disputed Claim for the purposes of voting on the Plan.

If a person holds Claims in more than one Class entitled to vote on the Plan, such

person will be entitled to complete and return a ballot for each Class.  If you do not receive a

ballot or if a ballot is damaged or lost, please contact:

> Tonkon Torp LLP
> Attention:  Spencer Fisher
> 1600 Pioneer Tower
> 888 SW Fifth Avenue
> Portland, OR  97204-2099
> Telephone:  (503) 802-2167

All persons entitled to vote on the Plan may cast their vote for or against the Plan by

completing, dating, and signing the enclosed ballot and returning it, by First Class mail or

hand delivery, to Debtors at the address indicated above.  In order to be counted, all ballots

must be executed and received at the above address no later than 4:00 p.m. Pacific time on

_____, 2019.  Any ballots received after 4:00 p.m. Pacific time on

_____, 2019 will not be included in any calculation to determine whether the

parties entitled to vote on the Plan have voted to accept or reject the Plan.

Ballots may also be received by Debtors by facsimile transmission to Tonkon Torp

LLP, Attention: Spencer Fisher, at (503) 972-3867.  Ballots sent by facsimile transmission

will be counted if faxed to Mr. Fisher and received by 4:00 p.m. Pacific time on

_____, 2019.

**Tonkon Torp** LLP
888 Fifth Avenue, Suite 1600
Portland, Oregon 97204
503 – 221 – 1440

When a ballot is signed and returned without further instruction regarding acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the Plan. When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the unsigned ballot will not be included in any calculation to determine whether parties entitled to vote on the Plan have voted to accept or reject the Plan. When a ballot is returned without indicating the amount of the Claim or an amount different from a timely filed Proof of Claim, then the amount shall be as set forth on Debtor's Schedules or any timely Proof of Claim filed with respect to such Claim or Order of the Bankruptcy Court.

**B.      PARTIES ENTITLED TO VOTE**

Pursuant to Section 1126 of the Bankruptcy Code, each Class of impaired Claims or Equity Security Holders that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan. Any holder of an Allowed Claim that is in an impaired Class under the Plan, and whose Class is not deemed to reject the Plan, is entitled to vote. A Class is "impaired" unless the legal, equitable, and contractual rights of the holders of Claims in that Class are left unaltered by the Plan or if the Plan reinstates the Claims held by members of such Class by (1i) curing any defaults; (2ii) reinstating the maturity of such Claim; (3iii) compensating the holder of such Claim for damages that result from the reasonable reliance on any contractual provision or law that allows acceleration of such Claim; and (4iv) otherwise leaving unaltered any legal, equitable, or contractual right of which the Claim entitles the holder of such Claim. Because of their favorable treatment, Classes that are not impaired are conclusively presumed to accept the Plan. Accordingly, it is not necessary to solicit votes from the holders of Claims in Classes that are not impaired. Classes of Claims or Interests that will not receive or retain any money or property under a Plan on account of such Claims or Interests are deemed, as a matter of law under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not entitled to vote on the Plan. All Classes of Claims are impaired under Debtors' Plan.

DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (JULY 15 OCTOBER 8, 2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

**C.      VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN**

As a condition to confirmation, the Bankruptcy Code requires that each impaired Class of Claims or Interests accept the Plan, subject to the exceptions described below in the section entitled "Cramdown of the Plan."  In a "Cramdown," at least one impaired Class of Claims must accept the Plan in order for the Plan to be confirmed.

For a Class of Claims to accept the Plan, Section 1126 of the Bankruptcy Code requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims of such Class, in both cases counting only those Claims actually voting to accept or reject the Plan.  The holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan.  If the Plan is confirmed, the Plan will be binding with respect to all holders of Claims and Interests in each Class, including Classes and members of Classes that did not vote or that voted to reject the Plan.

**D.      "CRAMDOWN" OF THE PLAN**

If the Plan is not accepted by all of the impaired Classes of Claims and Interests of Debtors, the Plan may still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the Bankruptcy Code's "Cramdown" provision if the Plan has been accepted by at least one Impaired Class of Claims, without counting the acceptances of any Insiders of Debtor, and the Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Impaired Class of Claims or Interests.  Debtors believe the Plan can be confirmed even if it is not accepted by all impaired Classes of Claims and hereby request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(6) of the Bankruptcy Code or otherwise modify the Plan in the event any Class of Creditors does not accept the Plan.

**Page 10 of 41** -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (JULY 15 OCTOBER 8, 2019)

**CONFIRMATION HEARING**

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2019, at __ a.m. Pacific time.  The confirmation hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, Courtroom _____, 1050 SW Sixth Avenue,, Portland, Oregon, before the Honorable _____, United States Bankruptcy Judge.  At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of the Creditors of Debtors.  Prior to the hearing, Debtors will submit a report to the Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the persons entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of the Plan.  Any objections to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and received by counsel for Debtors no later than 4:00 p.m. Pacific time on _____, 2019.  Unless an objection to confirmation is timely filed and received, it will not be considered by the Bankruptcy Court.

## III.     COMPANY BACKGROUND AND GENERAL INFORMATION

### A.     DEBTORS

B. & J. is an Oregon corporation authorized to transact business in various jurisdictions, including the State of Oregon, and is headquartered in Oregon.

B. & J. is the owner of real estate located at 4490 Silverton Road, N.E., Salem, Oregon ("Premises").  On the Petition Date, the Premises were leased to Better Business Management ("BBM").  BBM owned and operated an RV park and self-storage unit business on the Premises entitled Salem RV park and Storage.  The Premises consist of a 158-unit RV park and a 243-Unit, 29,750-square-foot (net rentable area) self-storage facility on a 9.06-acre parcel.  A 6,758-square-foot general purpose building that includes an office, laundry facilities, restrooms with showers, and a recreation room is located on the Premises.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

The building also includes 17 upstairs storage units that have been included in the total count and rentable area.

Berman is an individual residing in the State of Oregon, and is the President and 50% shareholder of B. & J.

**B.    DEBTORS' BUSINESS**

Prior to the Petition Date, B. & J. historically engaged in the real estate investment and development business.  B. & J. was formed in the early 1990s and developed various projects, including the real property at 4490 Silverton Road.  As part of its business plan to develop other properties and not operate an RV park, B. & J. entered into a Commercial Lease on or about January 30, 1997, leasing the Premises to BBM, which lease had been subsequently amended and extended at various times up to the Petition Date (collectively, the "BBM Lease").  Under the BBM Lease, BBM owned, operated, and maintained the RV park and self-storage facility and made lease payments to B. & J.  When the Marion County Circuit Court entered a General Judgment against B. & J., BBM, and Berman on October 31, 2018 (see "Marion County Litigation" below), BBM became insolvent and unable to continue performance and was, therefore, in breach of the Lease.  On the Petition Date, B. & J. sought Court authority to reject the BBM Lease and to change its business model to start operating an RV park and self-storage unit business.  (See B. & J.'s Motion to Reject Commercial Lease and Authorize Use and Operation of Property as RV park and Self-Storage Facility [ECF No. 7].  The Court granted Debtor's motion on February 13, 2019 [ECF No. 104].[1]

Prior to filing the Bankruptcy Cases, Berman's principal business was operating B. & J. and BBM, and other real estate-centered entities.  Berman intends to continue

---

[1] Unless otherwise specified, all references to docket entry numbers refer to B. & J.'s case, Bankruptcy Case No. 19-60138-pcm11.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

operating B. & J. under its new business model, and also intends to operate the other business entities in which he has been involved in the past.

## C.     MANAGEMENT OF B. & J.

B. & J. is an Oregon corporation owned 50% by William J. Berman and 50% by Debra Lynn Berman.  Mr. Berman is the president of Debtor and Ms. Berman is the secretary.  Together they have over 25 years of real estate development and investment experience and 26 years of experience in the RV park and storage rental business. Reorganized B. & J. will consist of the same owners and management as currently exists. Although B. & J. employs additional employees to maintain and repair its property in the ordinary course, Mr. and Ms. Berman perform much of the maintenance and repairs themselves, in addition to their management duties, saving B. & J. considerable expense and enhancing the value of B. & J.'s property.  All B. & J. employees are at-will employees. There are no retiree benefits to be paid by Reorganized Debtor employees.

## D.     MARION COUNTY LITIGATION

On or about April 12, 2013, Loren Hathaway, on behalf of himself and all others similarly situated within the State of Oregon, et. al, commenced a class action case against Debtor, BBM, and Berman in the Circuit Court for the State of Oregon for the County of Marion as Case No. 13C14321 ("Marion County Case").  Plaintiffs in the Marion County Case asserted claims for relief based on the manner in which BBM charged utility services to tenants at the RV park and later for rent retaliation.  Plaintiffs obtained an order against BBM, the owner and operator of the Salem RV park, for approximately $4 million dollars for improper utility charges.  The court entered a judgment against BBM in spite of the fact that the RV park never made any money on the utility charges.  The liability was based on a statutory construction of how kilowatt hours were charged to tenants and for charging a fixed meter fee.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

The fact that the tenants actually paid less for the utility services (at the commercial rate) than they would have paid had they been charged the full residential utility rate was deemed immaterial.  The court imposed damages equal to two times the tenants' monthly rental rate for each month of the tenant's occupancy.  When BBM tried to adjust its rates in a revenue neutral manner to comport with the court's ruling, plaintiffs' demand, and in accordance with the advice of its counsel, Saalfeld Griggs, BBM was then hit with a retaliation claim for which it was also found liable in the sum of approximately $1 million.  Once plaintiffs obtained liability against BBM, plaintiffs sought to impose liability on B. & J. as the owner of the property, and against Berman individually under piercing theories.  The state court ruled that Berman and B. & J. were also liable for all of the damages owed by BBM.  The court entered a General Judgment against B. & J., BBM, and Berman on October 31, 2018, in the sum of $3,900,501 on the electrical charge claims to the Main Class members, plus $964,450 to the Retaliation Sub-Class members.  Plaintiffs have submitted their claim for attorneys' fees and costs to the Court pursuant to ORCP 68.  The Court has issued an opinion granting Plaintiffs' attorneys' fees, but further proceedings are necessary to determine the final amount, and for entry of an order and judgment.  Defendants BBM, Berman, and B. & J. have filed an appeal of the initial judgment and will appeal the attorney fees award.  Debtors expect to prevail, or at least substantially prevail, on appeal.

**E.    ELECTRICAL BILLING AT THE RV PARK**

Salem R.V. Park was planned and developed by Eugene Jones (Ms. Berman's father) and was opened in 1991.  During planning and development of the park, Mr. Jones met and coordinated with the various municipalities and utilities.  Mr. Jones met with Portland General Electric to design an electric grid for the park's 124, and later 158, individually-metered sites, and to provide guidance as to an electrical billing system that was legal and equitable.  Despite Mr. Jones' desire to have a residential electrical meter at each and every

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

individual site (providing an exact kilowatt usage and billing per site), PGE determined that only 16 PGE <u>commercial</u> meters would be installed on the property.

This forced the park operator to act as a middleman for electrical billing by making them the responsible party for determining the gross power consumption of each individual tenant.  In the spirit of fairness, Mr. Jones placed a sub-meter at each of the sites, which allowed the park to accurately allocate power consumption to the individual sites and ensured that low power users would not subsidize high power users and that enabled all tenants to benefit from the much lower commercial rates.

With further guidance from PGE, this system of allocating power to each individual tenant site through a monthly sub-meter reading by the park operator was established and implemented with the understanding that while the park operator could not make a profit on electrical billing, it could charge a basic fee, or meter fee, not to exceed the basic charge billed by PGE.  The billing system thus implemented charged a fixed KWH charge (commercial rates constantly fluctuate based on usage) and a meter fee of five dollars (at a time when PGE's meter fee was seven).  This arrangement caused BBM to lose roughly four thousand dollars annually on electrical billing, effectively subsidizing its tenants' electrical costs.

In 1993, Berman began to manage the Park alongside Mr. Jones, with the electric billing systems Mr. Jones developed.  When BBM took over park operations, Berman (as an officer of BBM) audited all business practices, including electrical billing, and confirmed that the electrical billing practices, calculations, and allocation of the 16 PGE meters to the individual sites was proper and legal according to the parameters of several governing agencies, including the Public Utility Commission, Oregon Housing and Community Services (aka Oregon MultiFamily), and PGE.  BBM, therefore, continued operation of the RV park with the electrical billing practices originally implemented by Mr. Jones.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Over the follow 20 years, these billing practices were reconfirmed several times to

ensure that laws were being followed, including when all Oregon RV parks came under

landlord-tenant law, and after the Marion County lawsuit was filed.  Every audit during these

20-plus years of operation, and all government agencies (the Public Utility Commission,

Oregon Housing and Community Services, and PGE) confirmed that BBM's electrical billing

system was best practice and legal.  To this day, neither BBM nor either of Debtors have ever

made a dollar in profit from this electrical billing arrangement for tenants, a fact not disputed

by plaintiff's counsel in the Marion County Case, who stated in open court that "we have no

reason to believe Salem RV park has ever made money on utilities."

Despite the fact that only the word "Cost" and never the term "kWh" is used in

ORTLA, and most importantly, despite the fact that no tenant has ever paid more than what

PGE would have billed them individually, the Marion County Court ruled that because of

BBM's kilowatt hour charging structure, BBM was in violation of the law.

On July 29, 2013, under the advice of its legal counsel, Saalfeld Griggs PC, BBM

implemented changes to its electrical billing practices in an effort to mitigate damages by

complying with the demands of the lawsuit.  BBM implemented the following billing

changes:  (1) the meter fee was removed, (2) the kWh charge was reduced and now varies

monthly, and (3) rents were raised $20.  These changes resulted in little to no increased gross

revenue, but a gross loss on electrical billings of roughly $15,000 annually.  Rents were

raised to partially offset some of these losses and because rents had not been raised at the

RV park for a long time.  However, as a result of the changes, plaintiffs amended the

complaint and successfully sued the defendants for rent retaliation.

IV.  **EVENTS LEADING TO THE BANKRUPTCY FILING**

Debtors' bankruptcy filings were precipitated by the general judgment entered in the

Marion County Case and by the accumulated financial losses related thereto.  Debtors have

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  insufficient funds with which to pay the judgment and attorney fees for both plaintiffs and

2  itself.  As a result, Debtors filed for Chapter 11 bankruptcy.

3  **V.      SIGNIFICANT POST-PETITION EVENTS**

4          **A.      CASH COLLATERAL**

5          Early in the case, B. & J. obtained consent from Columbia Credit Union and court

6  approval to use cash collateral to pay ongoing Chapter 11 expenses.  The Court entered an

7  Order Authorizing the Use of Cash Collateral and Granting Adequate Protection on

8  February 6, 2019 [ECF No. 96].

9          **B.      REJECTION OF COMMERCIAL LEASE**

10         Upon filing the Chapter 11, B. & J. also obtained court approval to reject the

11 Commercial Lease between B. & J. and BBM, and to authorize B. & J. to operate the

12 property as an RV park and self-storage facility in the ordinary course of its business during

13 this bankruptcy proceeding, as more fully described above ("B. & J.'s Business").  A detailed

14 description of the rejected lease can be found at ECF No. 7 or by contacting counsel for

15 B. & J.

16         Consistent with rent restrictions imposed by an as-then-impending Oregon law, which

17 has now been enacted, B. & J. instituted a rent structure that would start to bring rental rates

18 in line with current market rents while at the same time not increasing rents too much from

19 the prior owner.  B. & J. is also investing to make improvements and repairs to create a

20 desirable park and storage operation.  After court approval, B. & J. hired employees and

21 commenced operations as the RV park and self-storage business entitled Salem Estates RV

22 Park and Salem Estates Storage.

23         **C.      RELIEF FROM STAY**

24         On or about May 15, 2019, B. & J. and Plaintiffs' Class Action counsel entered into a

25 Stipulated Order Granting Limited Relief From Stay [ECF No. 166] ("Relief From Stay

26 Order") whereby the parties agreed, and the Court ordered, that the state court proceeding

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

could continue to its completion at the trial level, and then continue on to resolve any and all

2 subsequent appeals; provided, however, that any further rulings would not constitute a lien

3 on any of the B. & J. property or assets, and any payment of any amounts ultimately ruled to

4 be due and owing would be governed by the Plan of Reorganization.

5       On or about June 21, 2019, Berman and Plaintiffs' Class Action counsel entered into

6 a Stipulated Order Granting Limited Relief From Stay [ECF No. 70 (Berman Case)][2]

7 ("Berman Relief From Stay Order") whereby the parties agreed and the Court ordered that

8 the state court proceeding could continue to its completion at the trial level, and then

9 continue on to resolve any and all subsequent appeals; provided, however, that any further

10 rulings would not constitute a lien on any of Berman's property or assets, and any payment

11 of any amounts ultimately ruled to be due and owing would be governed by the Plan of

12 Reorganization.  Additionally, the parties agreed that the Class Action Plaintiffs' judgment

13 lien would be promptly avoided pursuant to 11 U.S.C. § 547.

14     **D.**     **EMPLOYMENT OF PROFESSIONALS**

15       B. & J. has retained Tonkon Torp LLP as its general counsel in this case.  B. & J. also

16 sought and obtained Bankruptcy Court approval for the employment of (a) Saalfeld Griggs

17 PC as its special purpose counsel, and (b) Fischer, Hayes, Joye & Allen LLC as its

18 accountants.  B. & J. and Berman also expects to seek obtained an order authorizing the

19 employment of Janet M. Schroer as special purpose counsel to represent them as appellate

20 counsel for in the Class Action Case once such counsel is identified and retained.

21 Ms. Schroer will be paid by the Oregon State Bar Professional Liability Fund as repair

22 counsel based on the malpractice claim asserted against Saalfeld Griggs by Debtors.

23       Berman has retained Motschenbacher & Blattner LLP as its general counsel in the

24 Berman Bankruptcy Case, and as appellate counsel in the Class Action Case.  Berman also

25 _____

[2] Reference to documents in the "Berman Case" refer to docket entries in Bankruptcy Case
No. 19-60230-pcm11.

26

**Page 18 of 41** - DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (JULY 15 OCTOBER 8, 2019)

1  sought and obtained Bankruptcy Court approval for the employment of Fischer, Hayes,

2  Joye & Allen LLC as his accountant.  Berman may seek authority to employ alternate

3  appellate counsel for the Class Action Case if appropriate.

4  **VI.  ASSETS AND LIABILITIES**

5      **A.  ASSETS**

6          **1.  B. & J.'s Real Property**

7              As described above, B. & J.'s principal asset is the Real Property containing the 158-

8  unit RV park and 243-unit self-storage facility on a 9.06-acre parcel both located at 4490

9  Silverton Road, N.E., Salem, Oregon.  Debtors estimate that the value of the Real Property

10  was approximately $5,000,000 as of the B. & J. Petition Date.

11              As of the Petition Date, B. & J. held bare legal title to the Property and the RV Park

12  and Storage business was operated by Better Business Management ("BBM").  BBM was in

13  default under the lease with B. & J. and was insolvent as a result of the Class Action

14  judgment entered against it.  Thus, as of the Petition Date, B. & J. owned Property with an

15  insolvent tenant that was in default.  Such circumstances depressed the value of the Property.

16  In addition, the Property had been underperforming given that BBM had been charging

17  under-market rates.  Further, the Property had significant amounts of deferred maintenance,

18  which further depressed its value.  Although a prior appraisal had valued the Property at one

19  point at approximately $6 million, B. & J.'s owner believes that appraisal was too high and

20  given the present state of the Property as of the Petition Date, a $5 million valuation was

21  more accurate.  In any event, the Property value is expected to increase under the Plan since

22  B. & J. has taken possession of the Property and is now running an RV Park and Storage

23  business that it expects will be able to generate sufficient revenue to make the needed repairs

24  and improvements to increase the Property value during the life of the Plan.  Moreover, if

25  B. & J. is not able to generate sufficient funds to pay all Allowed Claims in full, then the

26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  Property will be liquidated.  Upon liquidation, the value will be determined by the

2  marketplace.

3            **2.**      **Berman's Real Property**

4        Berman co-owns, with his wife, real property and a single family home in Salem,

5  Oregon.  Legal title to the home is held by the Berman Living Trust Dated October 21, 1997.

6  Berman estimates that the total value of the residence was approximately $568,060 as of the

7  Berman Petition Date.  Therefore, Berman estimates that the value of his 50% interest in the

8  residence was approximately $284,030 as of the Berman Petition Date.

9            **3.**      **Personal Property**

10       As of the Petition Date, B. & J.'s hard assets consisted of a 2017 Chevy suburban and

11 a 2001 New Holland tractor, as well as some miscellaneous office furniture and equipment

12 with little market value.  B. & J. had cash accounts as of the Petition Date in the total amount

13 of $114,209.26, and also had a receivable from Berman in the amount of $61,000.  This

14 original amount was reduced prepetition by $29,730, when B. & J. acquired Mr. and

15 Ms. Berman's debt and collateral rights against BBM and its assets.  After the Court order

16 rejecting B. & J.'s lease with BBM, B. & J. acquired the personal property of BBM in

17 satisfaction of that lien.  The value of this additional property acquired postpetition is

18 $29,730.

19       B. & J. has a receivable from William Lloyd Developments, Inc. in the total face

20 amount of $1,837,322, of which $937,322 is a doubtful or uncollectable amount.  This

21 receivable is further subject to reduction based on a debt of $350,164 owed by B. & J. to

22 William Lloyd Developments, Inc.  A list of all of B. & J.'s assets can be found at

23 Schedule A/B [ECF No. 89].  The collection of the full amount of the receivable from

24 William Lloyd is doubtful since in the past 11 years William Lloyd has sold only one

25 undeveloped lot.  If payment were demanded immediately, the William Lloyd assets would

26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  need to be sold at depressed values resulting in a lower liquidation value and less funds to

2  pay B. & J.

3       As of the Berman Petition Date, Berman's hard assets consisted of miscellaneous

4  household goods and furnishings Berman co-owns with his wife.  Berman also had checking

5  accounts worth $35,937.53, and individual retirement accounts that Berman has claimed as

6  fully exempt.  Berman also owns stock or membership interests in the following entities:

7  (a) 50% of the outstanding stock of B. & J., (b) 50% of the outstanding stock of BBM,

8  (c) 28% of the outstanding stock of William Lloyd Investments, Inc., and (d) 20% of the

9  outstanding membership interest in B. & J. Investments LLC.  Berman is also owed

10  $107,690.33, including interest, in relation to a loan that he and his wife made to William

11  Lloyd Investments, Inc.  A list of Berman's assets can be found in Berman's Amended

12  Schedule A/B [ECF No. 44 (Berman Case)].

13       B. & J. is also owed reimbursement from BBM for legal fees ($302,603.25 paid and

14  $293,354 unpaid) incurred in the Marion County Case and owed under an indemnity clause

15  in BBM's Lease with B. & J. — B. & J. does not expect to collect this amount as BBM is

16  now out of business and has no assets.

17       Debtors also have potential malpractice claims against Saalfeld Griggs LLP for legal

18  advice that resulted in the Class Action retaliation liability claim of $964,450, plus attorney

19  fees to be awarded, and legal advice that resulted in disregard of corporate status that resulted

20  in the class action judgment liability of $4,864,951 (which includes the retaliation liability

21  claim of $964,450), plus attorney fees to be awarded.  Debtors have made demand on

22  Saalfeld Griggs for these claims and ~~is~~are negotiating a tolling agreement.  Debtors dispute

23  their liability to the Class Action Creditors but if such liability is upheld on appeal, Debtors

24  believe they have valid claims against Saalfeld Griggs since Debtors relied upon and

25  followed Saalfeld ~~Grigg's~~Griggs' advice in conducting its business in the manner in which

26  the state court found to result in the retaliation liability and the successor liability of both

**Page 21 of 41** -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (~~JULY 15~~ OCTOBER 8, 2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

Debtors.  Debtors intend to file an objection to Saalfeld Griggs' prepetition Claim and, as a result, expect that no payments will be made on that Claim pending the conclusion of the Class Action appeals and resolution of any malpractice claims against Saafeld Griggs.

Berman may also have a claim against his minor grandchildren, for gifts made to those minors' college savings funds.  Berman and his wife jointly contributed $21,740.57, half of which was from Berman.  As a result, Berman's potential claim equals $10,870.29, which has been included in Berman's liquidation analysis attached as Exhibit 3.

### B.    LIABILITIES

#### 1.    Columbia Credit Union

According to the proof of claim filed by Columbia Credit Union, the amount of debt owing to Columbia Credit Union as of the Petition Date is $2,225,037.38 in principal, plus accrued interest in the amount of $918.05, and $3,412.50 in prepetition attorney fees and costs.  To secure its obligations, on September 11, 2015, B. & J. granted Columbia Credit Union a security interest in the Real Property located at 4490 Silverton Road NE, Salem, Oregon.  Additionally, Berman executed and delivered a personal guaranty.  A copy of Columbia Credit Union's Deed of Trust and the Berman Guaranty are attached to its Proof of Claim [Claim 3 (B. &. J. Case)].

#### 2.    Marion County Case Claim

A General Judgment was entered against Debtor, BBM, and Mr. Berman on October 31, 2018, in the sum of $3,900,501 on the electrical charge claims to the Main Class members, plus $964,450 to the Retaliation Sub-Class members.  In addition, plaintiffs have requested attorney fees of $1,100,000 and costs of $52,378.39.  Debtors expect they will prevail in the appeal of the Marion County Case, and that as a result all creditors except the Class Action Claim plaintiffs will be paid in full.  If Debtors do not prevail in the appeal of the Marion County Case, B. & J. may be forced to will pursue the malpractice claims

1  against Saalfeld Griggs and if sufficient recovery is not made therefrom, will then liquidate

2  its assets.

3              **3.    Unsecured and Class Action Creditors**

4              The total amount of Unsecured Claims scheduled by B. & J. or filed by Creditors

5  against B. & J. is approximately $751,182.49 (excluding claims filed by the Class Action

6  Creditors which were listed as disputed). The total filed claims against B. & J. is

7  approximately $7,845,738.24. including the Class Action Claims. This amount excludes any

8  duplication for scheduled and filed claims and does not include anticipated costs and attorney

9  fees to be awarded to the Class Action Plaintiffs in the Class Action Case.

10             The total amount of Unsecured Claims scheduled by Berman or filed by Creditors

11  against Berman is approximately $355,785.49 (excluding the Columbia Guaranty Claim,

12  which is to be paid by B. & J., and claims filed by the Class Action Creditors which were

13  listed as disputed). The total amount of filed claims against Berman is approximately

14  $7,763,541.53. This amount excludes any duplication for scheduled and filed claims.

15  **VII.   DESCRIPTION OF PLAN**

16        **A.    BRIEF EXPLANATION OF CHAPTER 11**

17             Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.

18  Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its

19  creditors, and its equity holders. Confirmation of a plan of reorganization is the principal

20  objective of a Chapter 11 reorganization case. A plan of reorganization sets forth the means

21  for satisfying claims against, and interests in, a debtor. Confirmation of a plan of

22  reorganization by a bankruptcy court makes the plan binding upon the debtor, any issuer of

23  securities under the plan, any person acquiring property under the plan, and any creditor and

24  any equity holder of the debtor. Subject to certain limited exceptions provided by the

25  Bankruptcy Code, and except as specifically provided in the Plan of Reorganization, the

26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  confirmation order discharges debtor from any debt that arose prior to the date of such

2  confirmation and order and substitutes therefore the obligations specified in the plan.

3      **B.    SOLICITATION, CLASSIFICATION, AND TREATMENT OF**
4             **CLAIMS AND EQUITY SECURITIES**

5          **1.    General**

6          Pursuant to Section 1123(a)(1) of the Bankruptcy Code, a Plan of Reorganization

7  must designate classes of Claims and classes of Interests.  The Plan classifies all Claims and

8  Interests into four classes.  The classification of Claims and Interests is made for the purpose

9  of voting on the Plan and making distributions thereunder, and for ease of administration of

10  the Plan.  A Claim or Interest is classified in a particular Class only to the extent the Claim or

11  Interest qualifies within the description of that Class, and is classified in a different Class to

12  the extent the Claim or Interest qualifies within the description of such different Class.  A

13  Claim or Interest is entitled to vote in a particular Class and to receive distributions in such

14  Class only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in

15  that Class and has not been paid prior to the Effective Date.  Under the Plan, a Claim or

16  Interest is an Allowed Claim against, or an Allowed Interest in, Debtor to the extent that (a) a

17  proof of the Claim or Interest was (1) timely filed, or (2) deemed filed under applicable law

18  by reason of an order of the Bankruptcy Court; or (b) scheduled by Debtor on its Schedules

19  of Liabilities as neither contingent, unliquidated, or disputed; and (c) (i) no party-in-interest

20  has filed an objection within the time fixed by the Bankruptcy Court, (ii) the Claim or

21  Interest is allowed by Final Order; or (iii) with respect to an application for compensation or

22  reimbursement of an Administrative Expense Claim, the amount of the Administrative

23  Expense Claim has been approved by the Bankruptcy Court.

24          **2.    Unclassified Claims**

25          Administrative Expense Claims and Priority Tax Claims are not classified.  An

26  Administrative Expense Claim is a Claim against Debtors constituting an expense of

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code including, without limitation, the actual and necessary costs and expenses of preserving the estate and operating Debtors' business during the Bankruptcy Case; claims for the value of goods received by Debtors within 20 days before the Petition Date sold in the ordinary course of business; any indebtedness or obligations incurred by Debtors during the pendency of the Bankruptcy Case in connection with the provision of goods or services to Debtors; compensation for legal and other professional services and reimbursement of expenses; and statutory fees payable to the U.S. Trustee.

A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the Secured status of the Claim. Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtors within 30 days following the Effective Date or the date the Claim is Allowed, whichever is sooner, the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D). The IRS has filed a Priority Tax Claim against B. & J. in the amount of $336.82, and against Berman in the amount of $100.

Pursuant to the Plan of Reorganization, Administrative Expense Claims will be paid in full on the later of the Effective Date or the date on which any such Administrative Expense Claim becomes an Allowed Claim unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute, or regulation governing such Claim). However, the Administrative Expense Claims representing liabilities incurred in the ordinary course of business (including amounts owed to vendors and suppliers that have sold goods or furnished services to Debtors after the Petition Date), if any, will be paid in accordance with the terms and conditions of the particular transactions and any other agreements relating thereto.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Debtor will include the estimated amount of such expenses in the Report of Administrative Expense Claims to be filed prior to the hearing on confirmation.

### 3.     Classified Claims

The following summary of distributions under the Plan to Classified Claims does not purport to be complete and is subject to, and is qualified in its entirety by reference to, the Plan included herewith.

(a)     <u>Class 1 (Columbia Credit Union's Secured Claim Against B. & J.)</u>.  Columbia Credit Union ("Columbia") has a first-position security interest in B. & J.'s real property located at 4490 Silverton Road NE, Salem, Oregon, to secure its Allowed Secured Claim.  Columbia will retain its interest in its Collateral with the same priority that it had on the Petition Date.  Columbia will be paid the full amount of its Allowed Secured Claim in accordance with the existing terms of its loan to Debtor except for the changes to terms and covenants as detailed in the Plan.  The payments to Columbia from B. & J. will be approximately $14,080 per month.

(b)     <u>Class 2 (Columbia's Unsecured Guaranty Claim Against Berman)</u>.  Columbia has an unsecured claim against Berman pursuant to his personal guaranty of B. & J.'s debt to Columbia.  Berman will remain liable to Columbia under the personal guaranty in accordance with the existing terms of Columbia's loan to B. & J. except for the changes to terms and covenants as detailed in the Plan.

(c)     <u>Class 3 (Quicken Loans' Secured Claim Against Berman)</u>.  Quicken Loans, Inc. ("Quicken Loans") has a first-position security interest in Berman's personal residence in Salem, Oregon, to secure its Allowed Secured Claim.  The Class 3 claim is unimpaired and not entitled to vote on the Plan.  Quicken Loans will be paid the full amount of its Allowed Secured Claim in accordance with the existing terms of its loan to Berman.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1

        (d)       <u>Class 4 (General Unsecured Claims Against B. & J.)</u>. Each
2 ~~General~~<u>Class 4</u> Unsecured Claim against B. & J. will be paid in full, together with interest at
3 the federal judgment rate in effect on the Effective Date, from and after the Effective Date, as
4 follows: (i) commencing on the first day of the first full month following the Effective Date,
5 General Unsecured Creditors will be paid monthly payments of interest only, at the federal
6 judgment rate, for ~~12~~<u>24</u> months; and (ii) commencing on the first day of the ~~13th~~<u>25th</u> month
7 following the Effective Date, General Unsecured Creditors will be paid the full balance of
8 their claims in equal amortizing monthly payments, including principal and interest at the
9 federal judgment rate, for the next 36 ~~months~~ <u>months; provided, however, that if the appeal</u>
10 <u>of the Class Action Case is not successful and funds are due and owing to the Class 6</u>
11 <u>Claimants under a Final Order, then payments made to Class 4 Claims up to that point will be</u>
12 <u>recharacterized as payments of principal only and Class 4 Claims shall share pro rata in the</u>
13 <u>liquidation of assets described in Class 6 below on a pari passu basis with Class 6 Unsecured</u>
14 <u>Claims, with no further payments being made to Class 4 Claims until such time as payments</u>
15 <u>to Class 6 Unsecured Claims have caught up and are on par with the percentage previously</u>
16 <u>received by Class 4 Claims.</u>
17         (e)       <u>Class 5 (General Unsecured Claims Against Berman)</u>. Each
18 General Unsecured Claim against Berman will be paid first from B. & J. under Class 4, and
19 any balance remaining shall be paid its pro rata share of funds held in the "Berman
20 Unsecured Claims Fund," which shall be created and funded by Berman from his earnings
21 after the Effective Date. The amount to be paid by Berman into the Berman Unsecured
22 Claims Fund is $1,000 per month for five years, or until $60,000 has been deposited by
23 Berman, or such other amount as is required by the Bankruptcy Court. The Class 5 creditors'
24 pro rata share of the Berman Unsecured Claims Fund shall be calculated from the total
25 amount of Class 5 and Class 7 claims.
26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503 - 221 - 1440

1         (f)      Class 6 (Class Action Claims Against B. & J.).  Each holder of

2 an Allowed Claim as a result of a Final Order entered in the Class Action Litigation and

3 appeals will be paid the full amount ultimately awarded by the Court, if any, if B & J. has

4 sufficient assets to make such payments and, if not, from the pro rata Net Proceeds from the

5 closing down/liquidation and sale of B. & J.'s business and assets~~.~~, as follows:

6         Upon entry of a Final Order on the Class Action Claims, Reorganized B. & J.

7         will pay Allowed Class Action Claims, whether Secured or Unsecured, within

8         12 months after any order entered in the Class Action Case becomes a Final

9         Order.  To the Extent Reorganized B. & J. does not have sufficient funds to

10         pay the Allowed Class 6 Claims from available cash, then Reorganized

11         B. & J. shall first seek to pursue the malpractice claims against Saalfeld

12         Griggs in order to recover the full amounts owing to the Class Action Claims.

13         If recovery against Saalfeld Griggs is not successful, then Reorganized B. & J.

14         will seek to refinance the Real Property to generate Net Proceeds in a

15         sufficient amount to pay the Allowed Class 6 Claims.  If Reorganized B. & J.

16         is unable to refinance the Real Property, then Reorganized B. & J. shall

17         proceed to sell the Real Property and liquidate all its remaining assets, with

18         the Net Proceeds from the Real Property to be paid first in full satisfaction of

19         the Allowed Class 6 Secured Claims and thereafter to the Allowed Class 4 and

20         Class 6 Unsecured Claims.  If the Net Proceeds are insufficient to pay

21         Allowed Unsecured Claims in full, then each Unsecured Claimant shall be

22         paid its pro rata share of the amount owed to all Allowed Class 4 and 6

23         Unsecured Claims.  Proceeds from the malpractice claims against Saalfeld

24         Griggs, Net Proceeds of the refinancing, or Net Proceeds from the sale of the

25         Real Property and liquidation of assets shall first be paid to the Class 6

26         Unsecured Claims until such payments equal the same percentage that Class 4

Claims have received to date, and thereafter Class 4 and Class 6 Unsecured

Claims shall be paid from available funds on a pro rata basis.

      (g)     <u>Class 7 (Class Action Claims Against Berman)</u>.  Each holder of

an Allowed Claim as a result of a Final Order entered in the Class Action Litigation and

appeals will first be paid the full amount ultimately awarded by the Court, if any, if B & J.

has sufficient assets to make such payments and, if not, from the pro rata proceeds from the

closing down/liquidation and sale of B. & J.'s business and assets.  Any Class 7 Claims that

remain after payment is made by B. & J. shall be paid a pro rata share of the Berman

Unsecured Claims Fund described above.  The Class 7 creditors' pro rata share of the

Berman Unsecured Claims Fund shall be calculated from the total amount of Class 5 and

Class 7 claims.

      (h)     <u>Class 8 (Interests in B. & J.)</u>.  The Plan provides that holders of

Class 8 Interests will retain their interest in Reorganized B. & J., except in the event there are

insufficient funds to pay Creditors, in which case the interest will be of no value.

      (i)     <u>Class 9 (Berman's Interest in Estate)</u>.  The Plan provides that

Berman shall retain his interest in the property of his bankruptcy estate.

**C.    ADMINISTRATIVE EXPENSES**

    B. & J. has retained the following professionals:  (1) Tonkon Torp LLP as its general

counsel in this case, (2) Saalfeld Griggs PC as its special purpose counsel, and (3) Fischer,

Hayes, Joye & Allen LLC as its accountants.  The total amount of Administrative Expense

Claims is uncertain at this time.  It is anticipated that some professionals may agree to defer

payment of their Administrative Claim, if necessary.  A statement of professional fees

incurred in this case will be filed with the Court prior to the confirmation hearing.

    Berman has retained the following professionals:  (1) Motschenbacher & Blattner

LLP as his general bankruptcy counsel in this case, and as appellate counsel in the

Class Action, and (2) Fischer, Hayes, Joye & Allen LLC as his accountants.  The total

1    amount of Administrative Expense Claims is uncertain at this time.  It is anticipated that

2    some professionals may agree to defer payment of their Administrative Claim, if necessary.

3    A statement of professional fees incurred in this case will be filed with the Court prior to the

4    confirmation hearing.

5         **D.    EXECUTORY CONTRACTS**

6         The Bankruptcy Code gives Debtors the right, after commencement of their

7    Chapter 11 Cases, subject to approval of the Bankruptcy Court, to assume or reject executory

8    contracts and unexpired leases.  Generally, an "executory contract" is a contract under which

9    material performance (other than the payment of money) is still due by each party.  The Plan

10   provides for the assumption by debtors of all executory contracts and unexpired leases that

11   are not expressly rejected or subject to a motion for rejection filed on or before the

12   Confirmation Date.

13        If an executory contract or unexpired lease is or has been rejected, the other party to

14   the agreement may file a Proof of Claim for damages resulting from such rejection.  The Plan

15   provides that a Proof of Claim with respect to any such Claim must be filed within 30 days of

16   approval of the Bankruptcy Court of the rejection of the relevant executory contract or

17   unexpired lease.  Any such Claim shall constitute a Class 2 Claim to the extent such Claim is

18   finally treated as an Allowed Claim.  To the extent a debtor rejects an unexpired lease of

19   nonresidential real property, the Claim for damages resulting from such rejection will be

20   limited to the amount allowed under the Bankruptcy Code.

21        Upon assumption of an executory contract or unexpired lease, debtors must cure or

22   provide adequate assurance of prompt cure of any monetary defaults.  The Plan provides that

23   Reorganized Debtors will promptly cure all monetary defaults.

24

25

26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

E.     EFFECT OF CONFIRMATION

       1.     Binding Effect

       The treatment of, and consideration received by, holders of Allowed Claims and

Interests pursuant to the Plan will be in full satisfaction of their respective Claims against or

Interests in Debtors.  The Confirmation Order shall bind Debtors and any Creditor, and

discharge Debtors from any liability that arose before the Effective Date as provided in

Sections 524 and 1141 of the Bankruptcy Code, and any debt and liability of a kind specified

in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of

claim based on such Creditor's debt or liability is Filed or deemed Filed under Section 501 of

the Bankruptcy Code, (b) a Claim based on such debt or liability is Allowed, or (c) the holder

of the Claim based on such debt or liability has accepted the Plan.

       2.     Revesting, Operation of Business

       All property of the bankruptcy estates shall revest in each respective Reorganized

Debtor on the Effective Date free and clear of all rights, claims, liens, charges,

encumbrances, and interests, except as otherwise specifically provided in the Plan.  Except as

otherwise set forth in the Plan, there are no limitations or restrictions on the post-

confirmation activities or operations of Debtors.

       3.     Injunction

       The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy

Code.  Except as otherwise provided in the Plan, prior order of the Bankruptcy Court, or in

the Confirmation Order, confirmation of the Plan shall act as a permanent injunction

applicable to entities against (a) the commencement or continuation, including the issuance

or employment of process, of a judicial, administrative, or other action or proceeding of any

kind against Debtors or Reorganized Debtors that was or could have been commenced before

entry of the Confirmation Order; (b) the enforcement, attachment, collection, or recovery

against Reorganized Debtors or their assets of any judgment, award, decree, or order

Page 31 of 41 -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (JULY 15
OCTOBER 8, 2019)

E.     EFFECT OF CONFIRMATION

       1.     Binding Effect

       The treatment of, and consideration received by, holders of Allowed Claims and

Interests pursuant to the Plan will be in full satisfaction of their respective Claims against or

Interests in Debtors.  The Confirmation Order shall bind Debtors and any Creditor, and

discharge Debtors from any liability that arose before the Effective Date as provided in

Sections 524 and 1141 of the Bankruptcy Code, and any debt and liability of a kind specified

in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of

claim based on such Creditor's debt or liability is Filed or deemed Filed under Section 501 of

the Bankruptcy Code, (b) a Claim based on such debt or liability is Allowed, or (c) the holder

of the Claim based on such debt or liability has accepted the Plan.

       2.     Revesting, Operation of Business

       All property of the bankruptcy estates shall revest in each respective Reorganized

Debtor on the Effective Date free and clear of all rights, claims, liens, charges,

encumbrances, and interests, except as otherwise specifically provided in the Plan.  Except as

otherwise set forth in the Plan, there are no limitations or restrictions on the post-

confirmation activities or operations of Debtors.

       3.     Injunction

       The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy

Code.  Except as otherwise provided in the Plan, prior order of the Bankruptcy Court, or in

the Confirmation Order, confirmation of the Plan shall act as a permanent injunction

applicable to entities against (a) the commencement or continuation, including the issuance

or employment of process, of a judicial, administrative, or other action or proceeding of any

kind against Debtors or Reorganized Debtors that was or could have been commenced before

entry of the Confirmation Order; (b) the enforcement, attachment, collection, or recovery

against Reorganized Debtors or their assets of any judgment, award, decree, or order

Page 31 of 41 -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (JULY 15
OCTOBER 8, 2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

obtained before the Petition Date; (c) any act to obtain possession of or to exercise control over, or to create, perfect, or enforce a lien upon all or any part of the assets of Reorganized Debtors; (d) asserting any setoff or right of subrogation or recoupment of any kind against any obligation due to Debtors, Reorganized Debtors, or their property; and (e) proceeding in any manner in any place whatsoever that does not conform to, does not comply with, or is inconsistent with the provisions of the Plan or the Confirmation Order. Neither the injunction nor any provision of the Plan prohibits or otherwise overrides the Stipulated Relief From Stay Order which allows the Marion County Case to proceed to completion in state court, including all appeals.

### 4. Event of Default

Any material failure by Reorganized Debtors to perform any term of the Plan, which failure continues for a period of 15 Business Days following receipt by Reorganized Debtors of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default. Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, the Plan, or any agreement between the holder of such Claim and Debtors or Reorganized Debtors. An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

### 5. Modification of Plan; Revocation or Withdrawal of Plan

Subject to Section 1127 of the Bankruptcy Code, Debtors reserve the right to alter, amend, modify, or withdraw the Plan before its substantial consummation so long as the treatment of holders of Claims and Equity Security Holders under the Plan are not adversely affected.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  **6.     Retention of Jurisdiction**

2       Notwithstanding entry of the Confirmation Order, the Court shall retain jurisdiction

3  of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the

4  Bankruptcy Code and:

5       (a)     to classify the Claim or interest of any Creditor or stockholder,

6  reexamine Claims or Interests which have been owed for voting purposes, and determine any

7  objections that may be Filed to Claims or Interests;

8       (b)     to determine requests for payment of Claims entitled to priority

9  under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement

10  of expenses in favor of professionals employed at the expense of the Estates;

11       (c)     to avoid liens, transfers, or obligations, or to subordinate

12  Claims under Chapter 5 of the Bankruptcy Code;

13       (d)     to approve the assumption, assignment, or rejection of an

14  executory contract or an unexpired lease pursuant to this Plan;

15       (e)     to resolve controversies and disputes regarding the

16  interpretation of this Plan;

17       (f)     to implement the provisions of this Plan and enter orders in aid

18  of confirmation;

19       (g)     to adjudicate adversary proceedings and contested matters

20  pending or hereafter commenced in this Chapter 11 Case; and

21       (h)     to enter a final decree closing this Chapter 11 proceeding.

22       **7.     United States Trustee Fees**

23  ~~Reorganized~~Fees payable by Debtors ~~shall be responsible for timely payment~~under

24  28 U.S.C. § 1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the

25  Effective Date.  All quarterly fees ~~incurred~~ due to the United States Trustee pursuant to

26  28 ~~U.S.C. § 1930(a)(6)~~ USC § 1930(a), including fees due for any partial quarter, accruing

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

after the Effective Date shall be paid by the Reorganized Debtors as and when they become due and will be based on the Reorganized Debtors' total disbursements, including ordinary course of business disbursements as well as disbursements made to Claimants under this Plan.  Such fee obligations will not terminate until ~~the~~this Case is ~~closed,~~converted~~,~~ or dismissed~~.~~, or until this Case is no longer pending upon entry of a Final Order closing this Case, whichever first occurs, and all United States Trustee fees, including any such fees accrued in any partial quarter, shall be paid as a condition precedent prior to entry of an order closing the case.  After the Effective Date, the Reorganized Debtors shall file with the Court a post-confirmation, ~~Reorganized Debtors shall serve on the United States Trustee a~~ monthly financial report for each ~~quarter~~month, or portion thereof, that the case ~~remains~~is open.~~ ~~ or during any period of time that the case is reopened. The ~~quarterly~~monthly financial report shall include a statement of all disbursements made during the course of the ~~quarter~~month, whether or not pursuant to the Plan.  All United States Trustee fees, including any such fees accrued in any partial quarter, shall also be paid as a condition precedent prior to entry of a Final Decree.

## VIII.   LIQUIDATION ANALYSIS

A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds that the Plan is in the "best interest of creditors" or holders of Claims against, and Equity Security in, Debtors subject to such plan.  The best interest test is satisfied if a plan provides each dissenting or non-voting member of each impaired Class with a recovery not less than the recovery such member would receive if each Debtor was liquidated in a hypothetical case under Chapter 7 of the Bankruptcy Code by a Chapter 7 Trustee.  Debtors believe the holders of impaired Claims will not receive less than they would receive under a Chapter 7 liquidation.  In applying the "best interest" test, the Bankruptcy Court would ascertain the hypothetical recovery in a Chapter 7 proceeding to Secured Creditors, priority claimants, General Unsecured Creditors, and Equity Interest Holders.  The hypothetical Chapter 7

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1 recoveries would then be compared with the distribution offered to each Class of Claims or

2 Equity Security Holders under the Plan to determine that the Plan satisfied the "best interest"

3 test set forth in the Bankruptcy Code.

4        A Chapter 7 liquidation of B. & J.'s case would result in the immediate cessation of

5 B. & J.'s operations.  Substantially all assets would be liquidated and distributed to the

6 Secured Creditors, with Columbia Credit Union likely realizing its full $2,225,037 secured

7 claim amount plus default interest, costs, and fees, and the remaining General Unsecured,

8 Litigation, and Equity Classes realizing less than the amount proposed under the Plan.

9        A Chapter 7 liquidation of Berman's case would result in the immediate cessation of

10 Berman's primary source of income.  Berman's non-exempt assets would be liquidated and

11 approximately $43,703.33 would be available for distribution to all creditors, including

12 Columbia's $2,225,037 claim on Berman's personal guaranty.  Calculations for a

13 hypothetical Berman liquidation are set forth on the Liquidation Analysis attached hereto as

14 **Exhibit 3**.  The amount available in a Berman liquidation is less than the Berman Unsecured

15 Claims Fund, and thus General Unsecured, Class Action, and Equity Classes would receive

16 less in a Chapter 7 than the amount proposed under the Plan.

17 **IX.     POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

18        CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE

19 PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR

20 OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

21        The following discussion summarizes in general terms certain federal income tax

22 consequences of implementation of the Plan based upon existing provisions of the Internal

23 Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and

24 current administrative rulings and practice.  This summary does not address the federal

25 income tax consequences of the Plan to holders of priority or secured claims, nor does it

26 address any state, local, or foreign tax matters, or the federal income tax consequences to

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

certain types of creditors (including financial institutions, life insurance companies, tax

exempt organizations, and foreign taxpayers) to which special rules may apply. No rulings

or opinions have been or will be requested from the Internal Revenue Service with respect to

any of the tax aspects of the Plan.

THIS ANALYSIS DOES NOT ADDRESS THE TAX IMPLICATIONS OF THE

PLAN TO ANY SPECIFIC CREDITOR. Substantial differences in the tax implications are

likely to be encountered by creditors because of the difference in the nature of their Claims,

taxpayer status, method of accounting, and the impact of prior actions they may have taken

with respect to their Claims.

The following are the anticipated tax consequences of the Plan.

## A. TAX CONSEQUENCES TO DEBTORS

Debtors do not anticipate any extraordinary or unusual tax consequences because all

claims are expected to be paid in full. Debtors will experience ordinary income from

continued operations and earnings, and will be entitled to deduct business expenses for any

business related and interest expenses. Debtors do not anticipate any cancellation of debt

income. In the event B. & J. sells its real property, B. & J. shall pay any applicable capital

gains taxes that result from the sale.

## B. GENERAL TAX CONSEQUENCES ON CREDITORS

Creditors will likely not experience any unusual or extraordinary tax consequence

following Confirmation of the Plan. Payments will be treated in the same manner as they

were treated before Confirmation of the Plan. As discussed above, the effect of the Plan on

specific creditors will depend on specific financial information relative to such creditor and

that is unknown to Debtors. As a result, the tax implications to specific creditors cannot be

completely described herein.

EACH HOLDER IS URGED TO CONSULT SUCH HOLDER'S OWN TAX

ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO SUCH HOLDER UNDER

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503 - 221 - 1440

FEDERAL AND APPLICABLE STATE, LOCAL, AND FOREIGN TAX LAWS.

DEBTORS AND DEBTORS' COUNSEL EXPRESS NO OPINION AS TO THE TAX

CONSEQUENCES OF THE PLAN OR THE EFFECT THEREOF ON ANY CLAIMANT.

## X.    ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A.    CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on

_____, 2019 at ____.m Pacific time.  The hearing will be held at the

U.S. Bankruptcy Court for the District of Oregon, 1050 SW Sixth Avenue, #700, Portland,

Oregon in Courtroom No. _____, before the Honorable _____, United States

Bankruptcy Judge.  At that hearing, the Bankruptcy Court will consider whether the Plan

satisfies the various requirements of the Bankruptcy Code, including whether it is feasible

and whether it is in the best interest of Creditors and Equity Security Holders of Debtors.

Debtors will submit a report to the Bankruptcy Court prior to the hearing concerning the

votes for acceptance or rejection of the Plan by the parties entitled to vote thereon.  Any

objection to confirmation of the Plan must be timely filed on or before _____,

2019 to be considered by the Court.

### B.    REQUIREMENTS OF CONFIRMATION

At the hearing on confirmation, the Bankruptcy Court will determine whether the

provisions of Section 1129 of the Bankruptcy Code have been satisfied.  If all of the

provisions of Section 1129 are met, the Bankruptcy Court may enter an order confirming the

Plan.  Debtor believes the Plan satisfies all the requirements of Chapter 11 of the Bankruptcy

Code, that it has complied or will have complied with all of the requirements of Chapter 11,

and that the Plan has been proposed and is made in good faith.

With respect to Berman's Plan, the "Absolute Priority Rule" will apply in the event

that all of the following occur: (1) Debtors are unsuccessful on their appeal, (2) the Class

Action Creditors do not accept the Plan, (3) the Class Action Claims are not fully paid by

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

B. & J., and (4) the remainder of the Class Action Claims are not paid in full from the Berman Unsecured Claims Fund. The Absolute Priority Rule provides that unsecured creditors in a dissenting impaired class must be satisfied in full before the debtor is allowed to retain any property under the plan. In Berman's case, Berman proposes to retain approximately $97,665.13 of non-exempt property. Specifically, the non-exempt portion of equity in his residence, and the amount of cash Berman held on hand and in his checking account on the Petition Date. In the event the Absolute Priority Rule applies, Berman proposes to obtain a loan from family or from a financial institution to pay the Class Action Claims the lesser of $98,000, or the amount needed to pay the remaining balance of the Class Action Claims. See Section 7.7 of the Plan.

### C. CRAMDOWN

A Court may confirm a Plan, even if it is not accepted by all impaired classes, if the Plan has been accepted by at least one impaired class of claims and the Plan meets the cramdown requirements set forth in Section 1129(b) of the Bankruptcy Code. In the event any impaired Class of Claims does not accept the Plan, Debtor hereby requests the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise permit Debtors to modify the Plan.

### C.D. FEASIBILITY

Debtors believe that confirmation of the Plan is not likely to be followed by the liquidation of either of the Reorganized Debtors or a need for a further financial reorganization of Reorganized Debtors. The projections of B. & J.'s post-confirmation business, attached hereto as **Exhibit 1**, show sufficient earnings and cash flow from operations to support and meet the ongoing financial needs of Reorganized B. & J. The projections indicate that the Plan as proposed by Debtors is feasible and that Reorganized Debtors will be financially viable after confirmation of the Plan or B. & J. shall liquidate. The ultimate payout to the Class Action Creditors will be dependent on the result of the state

1 court appeals. If the Class Action Creditors prevail in full, then the likely result is that

2 B. & J. will be liquidated. The Plan provides for such a liquidation and, as such, it is feasible

3 even if Debtors do not prevail on the appeal.

4 **D.E. CONFIRMATION REQUIREMENTS FOR INDIVIDUAL DEBTOR**

5 To confirm the Plan, the Court must find that "the value of the property to be

6 distributed under the plan is not less than the projected disposable income of Debtor (as

7 defined in Section 1325(b)(2)) to be received during the five-year period beginning on the

8 date the first payment is due under the Plan, or during the period for which the Plan provides

9 payments, whichever is longer." 11 U.S.C. § 1129(a)(15)(B). The Plan proposes to pay

10 Berman's creditors from the Berman Unsecured Claims Fund, which will be funded with

11 Berman's projected disposable income (as defined in Section 1325(b)(2)) to be received by

12 Berman during the five-year period beginning on the Effective Date. See **Exhibit 2**, attached

13 hereto. The Plan therefore complies with Section 1129(a)(15)(B).

14 **E.F. ALTERNATIVES TO CONFIRMATION OF THE PLAN**

15 If a Plan is not confirmed, Debtors or another party-in-interest may attempt to

16 formulate or propose a different Plan or Plans of Reorganization. Such Plans might involve a

17 reorganization and continuation of B. & J.'s business, a sale of B. & J.'s business as a going

18 concern, an orderly liquidation of B. & J.'s assets, or any combination thereof. If no Plan of

19 Reorganization is determined by the Bankruptcy Court to be confirmable, the Chapter 11

20 case may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

21 In a liquidation, a Chapter 7 Trustee would be appointed with the purpose of

22 liquidating the assets of Debtors. Typically, in liquidation, assets are sold for less than their

23 going concern value and, accordingly, the return to Creditors and Interest holders is less than

24 the return in a reorganization, which derives the value to be distributed in a Plan from the

25 business as a going concern. Proceeds from liquidation would be distributed to Creditors and

26 Interest holders of Debtors in accordance with the priorities set forth in the Bankruptcy Code.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    Debtors believe there is no currently available alternative that would offer holders of

2  Claims and Interests in Debtors greater than the Plan and urges all parties entitled to vote on

3  the Plan to vote to accept the Plan.

4  **XI.    CONCLUSION**

5    Please read this Disclosure Statement and the Plan carefully.  After reviewing all the

6  information and making an informed decision, please vote by using the enclosed ballot.

7    DATED this ~~15th~~8th day of ~~July~~October, 2019.

                                        Respectfully submitted,
8
                                        B. & J. PROPERTY INVESTMENTS, INC.
9

10

                                        By /s/ William J. Berman
11                                          William J. Berman, President

12

13                                      By /s/ William J. Berman
                                            William J. Berman, Personally
14

15
   Presented by:
16
   TONKON TORP LLP
17

18
   By /s/ Timothy J. Conway
19       Timothy J. Conway, OSB No. 851752
         Ava L. Schoen, OSB No. 044072
20       888 S.W. Fifth Avenue, Suite 1600
         Portland, OR  97204-2099
21       Telephone:    (503) 221-1440
         Facsimile:    (503)274-8779
22       Email:        tim.conway@tonkon.com
                       ava.schoen@tonkon.com
23       Attorneys for B. & J. Property Investments, Inc.

24

25

26

**Page 40 of 41** -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (~~JULY 15~~
                      OCTOBER 8, 2019)

MOTSCHENBACHER & BLATTNER, LLP

By /s/ Nicholas J. Henderson
     Nicholas J. Henderson, OSB No. 074027
     Telephone:   (503) 417-0508
     Facsimile:    (503) 417-0528
     Email:       nhenderson@portlaw.com
     Attorneys for William J. Berman


**EXHIBITS ATTACHED**:

Exhibit 1:    B. & J. Financial Projections
Exhibit 2:    Berman Projected Disposable Income Calculation
Exhibit 3:    Berman Liquidation Analysis

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503‑221‑1440

Timothy J. Conway, OSB No. 851752 (Lead Attorney)
    Direct Dial:  (503) 802-2027
    Facsimile:    (503) 972-3727
    Email:       tim.conway@tonkon.com
Ava L. Schoen, OSB No. 044072
    Direct Dial:  (503) 802-2143
    Facsimile:    (503) 972-3843
    Email:       ava.schoen@tonkon.com
TONKON TORP LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

    Attorneys for B. & J. Property Investments, Inc.

Nicholas J. Henderson, OSB No. 074027
    Telephone:  (503) 417-0508
    Facsimile:    (503) 417-0528
    Email:       nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204

    Attorneys for William J. Berman

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 19-60138-pcm11 |
| B. & J. Property Investments, Inc., | |
|         Debtor. | |
| In re | Case No. 19-60230-pcm11 |
| William J. Berman, | **DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)** |
|         Debtor | |

DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY ........................................................1

       A.     Introduction.................................................................................1
       B.     Summary of the Plan....................................................................3
              1.     General..............................................................................3
              2.     Secured Creditors..............................................................4
              3.     General Unsecured Creditors..............................................4
              4.     Class Action Creditors.......................................................5
              5.     Equity Interests..................................................................5
              6.     Leases and Executory Contracts .........................................6
              7.     Effective Date....................................................................6
              8.     Cramdown Election............................................................6
       C.     Brief Explanation of Chapter 11 ...................................................6

II.    VOTING PROCEDURES AND CONFIRMATION OF PLAN .................7

       A.     Ballots and Voting Deadline..........................................................7
       B.     Parties Entitled to Vote ................................................................9
       C.     Votes Required for Class Acceptance of the Plan ...........................9
       D.     "CramDown" of the Plan.............................................................10
       E.     Confirmation Hearing..................................................................10

III.   COMPANY BACKGROUND AND GENERAL INFORMATION ........11

       A.     Debtors.......................................................................................11
       B.     Debtors' Business .......................................................................11
       C.     Management of B. & J..................................................................12
       D.     Marion County Litigation.............................................................13
       E.     Electrical Billing at the RV Park ..................................................14

IV.    EVENTS LEADING TO THE BANKRUPTCY FILING .........................16

V.     SIGNIFICANT POST-PETITION EVENTS ........................................16

       A.     Cash Collateral............................................................................16
       B.     Rejection of Commercial Lease.....................................................16
       C.     Relief From Stay..........................................................................17
       D.     Employment of Professionals .......................................................18

VI.    ASSETS AND LIABILITIES................................................................18

       A.     Assets .........................................................................................18
              1.     B. & J.'s Real Property .....................................................18
              2.     Berman's Real Property.....................................................19
              3.     Personal Property..............................................................19
       B.     Liabilities ...................................................................................21
              1.     Columbia Credit Union......................................................21
              2.     Marion County Case Claim ................................................22

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11   Doc 246   Filed 10/09/19

         3.      Unsecured Creditors..................................................................22

VII.    DESCRIPTION OF PLAN .......................................................................23

    A.     Brief Explanation of Chapter 11 ...............................................23
    B.     Solicitation, Classification, and Treatment of Claims and Equity Securities ..23
         1.      General ........................................................................23
         2.      Unclassified Claims ....................................................24
         3.      Classified Claims ........................................................25
    C.     Administrative Expenses ..........................................................29
    D.     Executory Contracts .................................................................29
    E.     Effect of Confirmation ............................................................30
         1.      Binding Effect .............................................................30
         2.      Revesting, Operation of Business ...............................30
         3.      Injunction ....................................................................31
         4.      Event of Default ..........................................................31
         5.      Modification of Plan; Revocation or Withdrawal of Plan ..................32
         6.      Retention of Jurisdiction .............................................32
         7.      United States Trustee Fees ..........................................33

VIII.   LIQUIDATION ANALYSIS ....................................................................33

IX.     POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ...34

    A.     Tax Consequences to Debtors....................................................35
    B.     General Tax Consequences on Creditors.....................................35

X.      ACCEPTANCE AND CONFIRMATION OF THE PLAN.......................................36

    A.     Confirmation Hearing ...............................................................36
    B.     Requirements of Confirmation ..................................................36
    C.     Cramdown.................................................................................37
    D.     Feasibility.................................................................................37
    E.     Confirmation Requirements for Individual Debtor ......................38
    F.     Alternatives to Confirmation of the Plan ...................................38

XI.    CONCLUSION......................................................................................39

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11   Doc 246   Filed 10/09/19

## I. INTRODUCTION AND SUMMARY

### A. INTRODUCTION

On January 17, 2019 (the "B. & J. Petition Date"), B. & J. Property Investments, Inc. ("B & J," or the "Company") filed a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). On January 28, 2019 (the "Berman Petition Date"), William J. Berman ("Berman") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On July 15, 2019, the Company and Berman (collectively, "Debtors") filed this Disclosure Statement (the "Disclosure Statement") with the U.S. Bankruptcy Court for the District of Oregon (the "Bankruptcy Court") and their Joint Plan of Reorganization (the "Plan"). A copy of the Plan is included herewith.

This Disclosure Statement is being provided to you by Debtors to enable you to make an informed judgment about the Plan. This Disclosure Statement has been prepared to disclose information that in Debtors' opinion is material, important, and helpful to evaluate the Plan. Among other things, this Disclosure Statement describes the manner in which Claims and Equity Securities will be treated. This Disclosure Statement summarizes the Plan, explains how the Plan will be implemented, outlines the risks of and alternatives to the Plan, and outlines the procedures involved in confirmation of the Plan. The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself. If any inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan shall control. You are urged to review the Plan and, if applicable, consult with your own counsel about the Plan and its impact on your legal rights before voting on the Plan.

Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code. Factual information contained in this Disclosure Statement is the representation of Debtors only and not of their attorneys, consultants, or accountants. The information has been obtained from the books

**Page 1 of 40 -** DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

and records of Debtors as well as other sources deemed reliable. Debtors have prepared the information contained herein in good faith, based on information available to Debtors. The information herein has not been subject to a verified audit. No representation concerning Debtors or the Plan is authorized by Debtors other than as set forth in this Disclosure Statement.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein and the delivery of this Disclosure Statement shall not imply that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date the material relied on in preparation of this Disclosure Statement was compiled.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan. Nothing contained herein shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving Debtors or any other party, or be deemed advice on the tax or other legal effects of the Plan on the holders of Claims or Equity Securities.

This Disclosure Statement has been approved by Order of the Bankruptcy Court as containing information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of holders of Claims or Equity Securities of relevant classes to make an informed judgment concerning the Plan. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2019 at _____ Pacific time. That hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, 1050 SW Sixth Ave., Courtroom _____, Portland, Oregon 97204, before the Honorable _____. The hearing on confirmation may be adjourned from time to time by the Bankruptcy Court

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11   Doc 246   Filed 10/09/19

1  without further notice except for an announcement made at the hearing on any adjournment

2  thereof.

3      A ballot has been enclosed with this Disclosure Statement for use in voting on the

4  Plan.  In order to be tabulated for purposes of determining whether the Plan has been

5  accepted or rejected, ballots must be <u>received</u> at the address indicated on the ballot no later

6  than 4:00 p.m. on _____, 2019.  Debtors believe that confirmation of the Plan is in the

7  best interests of the holders of Claims and urge you to accept the Plan.

8      This Disclosure Statement contains projected financial information and estimates that

9  demonstrate the feasibility of the Plan of Reorganization and Debtors' ability to continue

10  operations upon emergence from proceedings under the Bankruptcy Code.  Debtors prepared

11  such information for the limited purpose of furnishing information to Creditors to allow them

12  to make an informed judgment regarding acceptance of the Plan of Reorganization.  The

13  projections and estimates of value should not be regarded for the purpose of this Disclosure

14  Statement as representations or warranties by Debtors as to the accuracy of such information

15  or that any such projections or valuations will be realized.  Actual results could vary

16  significantly from these projections.

17      **B.**    **SUMMARY OF THE PLAN**

18      A copy of the Plan is attached and discussed in detail later in this Disclosure

19  Statement.  The following description of the Plan is intended as a summary only and is

20  qualified in its entirety by reference to the Plan.  Debtors urge each holder of a Claim to

21  carefully review the entire Plan, together with this Disclosure Statement, before voting on the

22  Plan.

23      **1.**    **General**

24      Generally, the Plan provides that (a) Debtors will operate in the ordinary course and

25  pay and satisfy their obligations from revenue generated by operations; and (b) Debtors shall

26  seek to prevail on the appeal in the Class Action Case so they may pay all Creditors in full

**Page 3 of 40** -   DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

over time; or (c) if Debtors are unable to prevail, or at least substantially prevail on the appeal, (i) B. & J. will pursue its malpractice claim against Saalfeld Griggs and if insufficient funds are recovered, B. & J. will then seek to refinance or sell the Real Property and liquidate its assets, with the Net Proceeds to be distributed pro rata to Unsecured Creditors; and (ii) Berman will distribute to unsecured creditors all the projected disposable income he believes he will receive during the five-year period after the Effective Date.

## 2. Secured Creditors

Reorganized B. & J.'s secured Creditor, Columbia Credit Union ("Columbia"), will be paid the full amount of its Allowed Secured Claim in accordance with the existing terms of its loan to B. & J., except as modified under the Plan with respect to certain loan terms and covenants set forth in the Plan. The payments to Columbia will be approximately $14,080 per month.

Reorganized Berman's secured Creditor, Quicken Loans, Inc. ("Quicken Loans"), will be paid the full amount of its Allowed Secured Claim in accordance with the existing terms of its loan to Berman. Berman's payments to Quicken Loans will be approximately $2,852 per month.

## 3. General Unsecured Creditors

If B. & J. prevails on the appeal of the Class Action Case, B. & J.'s General Unsecured Creditors will be paid in full, together with interest at the federal judgment rate in effect on the Effective Date. If B. & J. does not prevail on the appeal of the Class Action Case, and there are insufficient funds from a refinancing or liquidation of the malpractice claims, then General Unsecured Creditors will be paid pro rata from the sale and liquidation of B. & J.'s assets on a pro rata basis with the Class Action Claims.

To the extent not paid by B. & J., Reorganized Berman's General Unsecured Creditors and Class Action Creditors (discussed below) shall be paid their pro rata share of

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    $60,000, which is Berman's projected disposable income for the five-year period following

2    the Effective Date.  See **Exhibit 3**, attached hereto.

3                             **4.    Class Action Creditors**

4            Certain Creditors in the Marion County Case (the "Class Action Claims") were

5    awarded a General Judgment in the total amount of $4,864,951 against Debtors on

6    October 31, 2018, which Debtors have appealed.  If the Class Action Claims are denied on

7    appeal, they will receive nothing.  If the Class Action Claims are allowed and prevail on

8    appeal, then such Allowed Claims will be paid in full if B. & J. has sufficient funds to do so

9    once the appeals have concluded, or B. & J. will liquidate its assets and pay the Class Action

10   Creditors from available funds.  B. & J. plans to file an adversary proceeding under 11

11   USC § 547 avoiding the judgment lien obtained by the Class Action Claimants as a

12   bankruptcy preference.  If the B. & J. preference claim is successful, the Class Action Claims

13   will be Unsecured Claims even if Allowed.  If the preference claim is not successful and the

14   Class Action plaintiffs prevail on the appeal, they would have a Secured Claim against the

15   Real Property up to the value of the Real Property in excess of prior liens.  If Class Action

16   Claims are paid in full and entitled to interest, they shall receive interest at the federal

17   judgment rate.  To the extent the Allowed Class Action Creditors are not paid in full by

18   B. & J., they shall receive payment from Berman in the amount of their pro rata share of

19   $60,000.

20                             **5.    Equity Interests**

21           The Plan provides that existing equity interests in B. & J. will be left in place unless

22   the Company is liquidated, in which case equity will be extinguished.

23           The Plan provides that Berman will retain his interests in assets of his bankruptcy

24   estate.

25

26

**Page 5 of 40** -   DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8,
                     2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

All unexpired leases and executory contracts will be assumed by the respective

Debtors through the Plan unless such unexpired leases and executory contracts have

previously been assumed and assigned or rejected, or a motion seeking their assumption or

rejection has been filed before the Confirmation Date.

7.        **Effective Date**

The Effective Date of the Plan shall be the 11th day following entry of the

Confirmation Order.

8.        **Cramdown Election**

In the event any Class does not accept the Plan, Debtors reserve the right to request

that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

Bankruptcy Code or otherwise modify the Plan.

C.        **BRIEF EXPLANATION OF CHAPTER 11**

Chapter 11 is the principal reorganization provision of the Bankruptcy Code.

Pursuant to Chapter 11, a debtor attempts to reorganize its business for the benefit of the

debtor, its creditors, and other parties-in-interest.

The formulation and confirmation of a plan of reorganization is the principal purpose

of a Chapter 11 case.  A plan of reorganization sets forth the method for compensating the

holders of claims and interests in Debtor.  If the plan is confirmed by the Bankruptcy Court,

it will be binding on Debtors, their creditors, and all other parties-in-interest.  A claim or

interest is impaired under a plan of reorganization if the plan provides that the legal,

equitable, or contractual rights of the holder of such claim or interest are altered.  A holder of

an impaired claim or interest is entitled to vote to accept or reject the plan.  Chapter 11 does

not require all holders of claims and interests to vote in favor of a plan in order for the

Bankruptcy Court to confirm it.  However, the Bankruptcy Court must find that the plan

meets a number of statutory tests before it may approve the plan.  These tests are designed to

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  protect the interests of holders of claims or interests who do not vote to accept the plan, but

2  who will nonetheless be bound by the plan's provisions if it is confirmed by the Bankruptcy

3  Court.

4         An Unsecured Creditors' Committee was not appointed by the U.S. Trustee's office

5  in this case pursuant to 11 U.S.C. §§ 1102(a) and (b).

6  **II.    VOTING PROCEDURES AND CONFIRMATION OF PLAN**

7         **A.    BALLOTS AND VOTING DEADLINE**

8         A ballot to be used for voting to accept or reject the Plan is enclosed with each copy

9  of this Disclosure Statement.  After carefully reviewing this Disclosure Statement and its

10  exhibits, including the Plan, please indicate your acceptance or rejection of the Plan by

11  voting in favor or against the Plan on the enclosed ballot as directed below.

12         The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for

13  the acceptance or rejection of the Plan must be <u>received</u> by Debtors no later than 4:00 p.m.

14  Pacific time on _____, 2019 at the following address:

15                         Tonkon Torp LLP
                          Attention:  Spencer Fisher
16                         1600 Pioneer Tower
                          888 SW Fifth Avenue
17                         Portland, OR  97204-2099

18  or via facsimile transmission to Spencer Fisher at (503) 972-3867.

19         Holders of each Claim scheduled by Debtors or with respect to which a Proof of

20  Claim has been filed will receive ballots and are permitted to vote based on the amount of the

21  Proof of Claim, except as discussed below.  If no Proof of Claim has been filed, then the vote

22  will be based on the amount scheduled by Debtors in their Schedules.  The Bankruptcy Code

23  provides that such votes will be counted unless the Claim has been disputed, disallowed,

24  disqualified, or suspended prior to computation of the vote on the Plan.  A Claim to which an

25  objection has been filed is not allowed to vote unless and until the Bankruptcy Court rules on

26  the objection.  Holders of disputed Claims who have settled their dispute with Debtors are

**Page 7 of 40** -   DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

entitled to vote the settled amount of their Claim.  The Bankruptcy Code and rules provide that the Bankruptcy Court may, if timely requested to do so by the holder of such Claim, estimate or temporarily allow a disputed Claim for the purposes of voting on the Plan.

If a person holds Claims in more than one Class entitled to vote on the Plan, such person will be entitled to complete and return a ballot for each Class.  If you do not receive a ballot or if a ballot is damaged or lost, please contact:

> Tonkon Torp LLP
> Attention:  Spencer Fisher
> 1600 Pioneer Tower
> 888 SW Fifth Avenue
> Portland, OR  97204-2099
> Telephone:  (503) 802-2167

All persons entitled to vote on the Plan may cast their vote for or against the Plan by completing, dating, and signing the enclosed ballot and returning it, by First Class mail or hand delivery, to Debtors at the address indicated above.  In order to be counted, all ballots must be executed and <u>received</u> at the above address no later than 4:00 p.m. Pacific time on _____, 2019.  Any ballots received after 4:00 p.m. Pacific time on _____, 2019 will not be included in any calculation to determine whether the parties entitled to vote on the Plan have voted to accept or reject the Plan.

Ballots may also be received by Debtors by facsimile transmission to Tonkon Torp LLP, Attention: Spencer Fisher, at (503) 972-3867.  Ballots sent by facsimile transmission will be counted if faxed to Mr. Fisher and received by 4:00 p.m. Pacific time on _____, 2019.

When a ballot is signed and returned without further instruction regarding acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the Plan.  When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the unsigned ballot will not be included in any calculation to determine whether parties entitled to vote on the Plan have voted to accept or reject the Plan.  When a ballot is returned without

1    indicating the amount of the Claim or an amount different from a timely filed Proof of Claim,

2    then the amount shall be as set forth on Debtor's Schedules or any timely Proof of Claim

3    filed with respect to such Claim or Order of the Bankruptcy Court.

4                    **B.      PARTIES ENTITLED TO VOTE**

5           Pursuant to Section 1126 of the Bankruptcy Code, each Class of impaired Claims or

6    Equity Security Holders that is not deemed to reject the Plan is entitled to vote to accept or

7    reject the Plan.  Any holder of an Allowed Claim that is in an impaired Class under the Plan,

8    and whose Class is not deemed to reject the Plan, is entitled to vote.  A Class is "impaired"

9    unless the legal, equitable, and contractual rights of the holders of Claims in that Class are

10   left unaltered by the Plan or if the Plan reinstates the Claims held by members of such

11   Class by (i) curing any defaults; (ii) reinstating the maturity of such Claim;

12   (iii) compensating the holder of such Claim for damages that result from the reasonable

13   reliance on any contractual provision or law that allows acceleration of such Claim; and

14   (iv) otherwise leaving unaltered any legal, equitable, or contractual right of which the Claim

15   entitles the holder of such Claim.  Because of their favorable treatment, Classes that are not

16   impaired are conclusively presumed to accept the Plan.  Accordingly, it is not necessary to

17   solicit votes from the holders of Claims in Classes that are not impaired.  Classes of Claims

18   or Interests that will not receive or retain any money or property under a Plan on account of

19   such Claims or Interests are deemed, as a matter of law under Section 1126(g) of the

20   Bankruptcy Code, to have rejected the Plan and are likewise not entitled to vote on the Plan.

21   All Classes of Claims are impaired under Debtors' Plan.

22                    **C.      VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN**

23          As a condition to confirmation, the Bankruptcy Code requires that each impaired

24   Class of Claims or Interests accept the Plan, subject to the exceptions described below in the

25   section entitled "Cramdown of the Plan."  In a "Cramdown," at least one impaired Class of

26   Claims must accept the Plan in order for the Plan to be confirmed.

**Page 9 of 40** -   DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8,
                    2019)

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

For a Class of Claims to accept the Plan, Section 1126 of the Bankruptcy Code requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims of such Class, in both cases counting only those Claims actually voting to accept or reject the Plan. The holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan. If the Plan is confirmed, the Plan will be binding with respect to all holders of Claims and Interests in each Class, including Classes and members of Classes that did not vote or that voted to reject the Plan.

## D. "CRAMDOWN" OF THE PLAN

If the Plan is not accepted by all of the impaired Classes of Claims and Interests of Debtors, the Plan may still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the Bankruptcy Code's "Cramdown" provision if the Plan has been accepted by at least one Impaired Class of Claims, without counting the acceptances of any Insiders of Debtor, and the Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Impaired Class of Claims or Interests. Debtors believe the Plan can be confirmed even if it is not accepted by all impaired Classes of Claims and hereby request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(6) of the Bankruptcy Code or otherwise modify the Plan in the event any Class of Creditors does not accept the Plan.

## E. CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2019, at __ a.m. Pacific time. The confirmation hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, Courtroom _____, 1050 SW Sixth Avenue,, Portland, Oregon, before the Honorable _____, United States Bankruptcy Judge. At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1 feasible and whether it is in the best interests of the Creditors of Debtors. Prior to the
2 hearing, Debtors will submit a report to the Bankruptcy Court concerning the votes for
3 acceptance or rejection of the Plan by the persons entitled to vote thereon.

4       Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may
5 object to confirmation of the Plan. Any objections to confirmation of the Plan must be made
6 in writing and filed with the Bankruptcy Court and received by counsel for Debtors no later
7 than 4:00 p.m. Pacific time on _____, 2019. Unless an objection to confirmation
8 is timely filed and received, it will not be considered by the Bankruptcy Court.

9 **III.    COMPANY BACKGROUND AND GENERAL INFORMATION**

10       **A.    DEBTORS**

11       B. & J. is an Oregon corporation authorized to transact business in various
12 jurisdictions, including the State of Oregon, and is headquartered in Oregon.

13       B. & J. is the owner of real estate located at 4490 Silverton Road, N.E., Salem,
14 Oregon ("Premises"). On the Petition Date, the Premises were leased to Better Business
15 Management ("BBM"). BBM owned and operated an RV park and self-storage unit business
16 on the Premises entitled Salem RV park and Storage. The Premises consist of a 158-unit
17 RV park and a 243-Unit, 29,750-square-foot (net rentable area) self-storage facility on a
18 9.06-acre parcel. A 6,758-square-foot general purpose building that includes an office,
19 laundry facilities, restrooms with showers, and a recreation room is located on the Premises.
20 The building also includes 17 upstairs storage units that have been included in the total count
21 and rentable area.

22       Berman is an individual residing in the State of Oregon, and is the President and 50%
23 shareholder of B. & J.

24       **B.    DEBTORS' BUSINESS**

25       Prior to the Petition Date, B. & J. historically engaged in the real estate investment
26 and development business. B. & J. was formed in the early 1990s and developed various

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

projects, including the real property at 4490 Silverton Road.  As part of its business plan to develop other properties and not operate an RV park, B. & J. entered into a Commercial Lease on or about January 30, 1997, leasing the Premises to BBM, which lease had been subsequently amended and extended at various times up to the Petition Date (collectively, the "BBM Lease").  Under the BBM Lease, BBM owned, operated, and maintained the RV park and self-storage facility and made lease payments to B. & J.  When the Marion County Circuit Court entered a General Judgment against B. & J., BBM, and Berman on October 31, 2018 (see "Marion County Litigation" below), BBM became insolvent and unable to continue performance and was, therefore, in breach of the Lease.  On the Petition Date, B. & J. sought Court authority to reject the BBM Lease and to change its business model to start operating an RV park and self-storage unit business.  (See B. & J.'s Motion to Reject Commercial Lease and Authorize Use and Operation of Property as RV park and Self-Storage Facility [ECF No. 7].  The Court granted Debtor's motion on February 13, 2019 [ECF No. 104].[1]

Prior to filing the Bankruptcy Cases, Berman's principal business was operating B. & J. and BBM, and other real estate-centered entities.  Berman intends to continue operating B. & J. under its new business model, and also intends to operate the other business entities in which he has been involved in the past.

**C.    MANAGEMENT OF B. & J.**

B. & J. is an Oregon corporation owned 50% by William J. Berman and 50% by Debra Lynn Berman.  Mr. Berman is the president of Debtor and Ms. Berman is the secretary.  Together they have over 25 years of real estate development and investment experience and 26 years of experience in the RV park and storage rental business.  Reorganized B. & J. will consist of the same owners and management as currently exists.

---

[1] Unless otherwise specified, all references to docket entry numbers refer to B. & J.'s case, Bankruptcy Case No. 19-60138-pcm11.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

1    Although B. & J. employs additional employees to maintain and repair its property in the

2    ordinary course, Mr. and Ms. Berman perform much of the maintenance and repairs

3    themselves, in addition to their management duties, saving B. & J. considerable expense and

4    enhancing the value of B. & J.'s property.  All B. & J. employees are at-will employees.

5    There are no retiree benefits to be paid by Reorganized Debtor employees.

6        **D.    MARION COUNTY LITIGATION**

7        On or about April 12, 2013, Loren Hathaway, on behalf of himself and all others

8    similarly situated within the State of Oregon, et. al, commenced a class action case against

9    Debtor, BBM, and Berman in the Circuit Court for the State of Oregon for the County of

10   Marion as Case No. 13C14321 ("Marion County Case").  Plaintiffs in the Marion County

11   Case asserted claims for relief based on the manner in which BBM charged utility services to

12   tenants at the RV park and later for rent retaliation.  Plaintiffs obtained an order against

13   BBM, the owner and operator of the Salem RV park, for approximately $4 million dollars for

14   improper utility charges.  The court entered a judgment against BBM in spite of the fact that

15   the RV park never made any money on the utility charges.  The liability was based on a

16   statutory construction of how kilowatt hours were charged to tenants and for charging a fixed

17   meter fee.

18       The fact that the tenants actually paid less for the utility services (at the commercial

19   rate) than they would have paid had they been charged the full residential utility rate was

20   deemed immaterial.  The court imposed damages equal to two times the tenants' monthly

21   rental rate for each month of the tenant's occupancy.  When BBM tried to adjust its rates in a

22   revenue neutral manner to comport with the court's ruling, plaintiffs' demand, and in

23   accordance with the advice of its counsel, Saalfeld Griggs, BBM was then hit with a

24   retaliation claim for which it was also found liable in the sum of approximately $1 million.

25   Once plaintiffs obtained liability against BBM, plaintiffs sought to impose liability on B. & J.

26   as the owner of the property, and against Berman individually under piercing theories.  The

**Page 13 of 40** - DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8,
     2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  state court ruled that Berman and B. & J. were also liable for all of the damages owed by

2  BBM.  The court entered a General Judgment against B. & J., BBM, and Berman on

3  October 31, 2018, in the sum of $3,900,501 on the electrical charge claims to the Main

4  Class members, plus $964,450 to the Retaliation Sub-Class members.  Plaintiffs have

5  submitted their claim for attorneys' fees and costs to the Court pursuant to ORCP 68.  The

6  Court has issued an opinion granting Plaintiffs' attorneys' fees, but further proceedings are

7  necessary to determine the final amount, and for entry of an order and judgment.  Defendants

8  BBM, Berman, and B. & J. have filed an appeal of the initial judgment and will appeal the

9  attorney fees award.  Debtors expect to prevail, or at least substantially prevail, on appeal.

10  **E.  ELECTRICAL BILLING AT THE RV PARK**

11  Salem R.V. Park was planned and developed by Eugene Jones (Ms. Berman's father)

12  and was opened in 1991.  During planning and development of the park, Mr. Jones met and

13  coordinated with the various municipalities and utilities.  Mr. Jones met with Portland

14  General Electric to design an electric grid for the park's 124, and later 158, individually-

15  metered sites, and to provide guidance as to an electrical billing system that was legal and

16  equitable.  Despite Mr. Jones' desire to have a residential electrical meter at each and every

17  individual site (providing an exact kilowatt usage and billing per site), PGE determined that

18  only 16 PGE commercial meters would be installed on the property.

19  This forced the park operator to act as a middleman for electrical billing by making

20  them the responsible party for determining the gross power consumption of each individual

21  tenant.  In the spirit of fairness, Mr. Jones placed a sub-meter at each of the sites, which

22  allowed the park to accurately allocate power consumption to the individual sites and ensured

23  that low power users would not subsidize high power users and that enabled all tenants to

24  benefit from the much lower commercial rates.

25  With further guidance from PGE, this system of allocating power to each individual

26  tenant site through a monthly sub-meter reading by the park operator was established and

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1   implemented with the understanding that while the park operator could not make a profit on

2   electrical billing, it could charge a basic fee, or meter fee, not to exceed the basic charge

3   billed by PGE.  The billing system thus implemented charged a fixed KWH charge

4   (commercial rates constantly fluctuate based on usage) and a meter fee of five dollars (at a

5   time when PGE's meter fee was seven).  This arrangement caused BBM to lose roughly four

6   thousand dollars annually on electrical billing, effectively subsidizing its tenants' electrical

7   costs.

8        In 1993, Berman began to manage the Park alongside Mr. Jones, with the electric

9   billing systems Mr. Jones developed.  When BBM took over park operations, Berman (as an

10  officer of BBM) audited all business practices, including electrical billing, and confirmed

11  that the electrical billing practices, calculations, and allocation of the 16 PGE meters to the

12  individual sites was proper and legal according to the parameters of several governing

13  agencies, including the Public Utility Commission, Oregon Housing and Community

14  Services (aka Oregon MultiFamily), and PGE.  BBM, therefore, continued operation of the

15  RV park with the electrical billing practices originally implemented by Mr. Jones.

16       Over the follow 20 years, these billing practices were reconfirmed several times to

17  ensure that laws were being followed, including when all Oregon RV parks came under

18  landlord-tenant law, and after the Marion County lawsuit was filed.  Every audit during these

19  20-plus years of operation, and all government agencies (the Public Utility Commission,

20  Oregon Housing and Community Services, and PGE) confirmed that BBM's electrical billing

21  system was best practice and legal.  To this day, neither BBM nor either of Debtors have ever

22  made a dollar in profit from this electrical billing arrangement for tenants, a fact not disputed

23  by plaintiff's counsel in the Marion County Case, who stated in open court that "we have no

24  reason to believe Salem RV park has ever made money on utilities."

25       Despite the fact that only the word "Cost" and never the term "kWh" is used in

26  ORTLA, and most importantly, despite the fact that no tenant has ever paid more than what

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    PGE would have billed them individually, the Marion County Court ruled that because of

2    BBM's kilowatt hour charging structure, BBM was in violation of the law.

3         On July 29, 2013, under the advice of its legal counsel, Saalfeld Griggs PC, BBM

4    implemented changes to its electrical billing practices in an effort to mitigate damages by

5    complying with the demands of the lawsuit.  BBM implemented the following billing

6    changes:  (1) the meter fee was removed, (2) the kWh charge was reduced and now varies

7    monthly, and (3) rents were raised $20.  These changes resulted in little to no increased gross

8    revenue, but a gross loss on electrical billings of roughly $15,000 annually.  Rents were

9    raised to partially offset some of these losses and because rents had not been raised at the

10   RV park for a long time.  However, as a result of the changes, plaintiffs amended the

11   complaint and successfully sued the defendants for rent retaliation.

12   **IV.    EVENTS LEADING TO THE BANKRUPTCY FILING**

13        Debtors' bankruptcy filings were precipitated by the general judgment entered in the

14   Marion County Case and by the accumulated financial losses related thereto.  Debtors have

15   insufficient funds with which to pay the judgment and attorney fees for both plaintiffs and

16   itself.  As a result, Debtors filed for Chapter 11 bankruptcy.

17   **V.    SIGNIFICANT POST-PETITION EVENTS**

18        **A.    CASH COLLATERAL**

19        Early in the case, B. & J. obtained consent from Columbia Credit Union and court

20   approval to use cash collateral to pay ongoing Chapter 11 expenses.  The Court entered an

21   Order Authorizing the Use of Cash Collateral and Granting Adequate Protection on

22   February 6, 2019 [ECF No. 96].

23        **B.    REJECTION OF COMMERCIAL LEASE**

24        Upon filing the Chapter 11, B. & J. also obtained court approval to reject the

25   Commercial Lease between B. & J. and BBM, and to authorize B. & J. to operate the

26   property as an RV park and self-storage facility in the ordinary course of its business during

**Page 16 of 40** -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8,
                2019)

this bankruptcy proceeding, as more fully described above ("B. & J.'s Business").  A detailed description of the rejected lease can be found at ECF No. 7 or by contacting counsel for B. & J.

Consistent with rent restrictions imposed by an as-then-impending Oregon law, which has now been enacted, B. & J. instituted a rent structure that would start to bring rental rates in line with current market rents while at the same time not increasing rents too much from the prior owner.  B. & J. is also investing to make improvements and repairs to create a desirable park and storage operation.  After court approval, B. & J. hired employees and commenced operations as the RV park and self-storage business entitled Salem Estates RV Park and Salem Estates Storage.

### C.    RELIEF FROM STAY

On or about May 15, 2019, B. & J. and Plaintiffs' Class Action counsel entered into a Stipulated Order Granting Limited Relief From Stay [ECF No. 166] ("Relief From Stay Order") whereby the parties agreed, and the Court ordered, that the state court proceeding could continue to its completion at the trial level, and then continue on to resolve any and all subsequent appeals; provided, however, that any further rulings would not constitute a lien on any of the B. & J. property or assets, and any payment of any amounts ultimately ruled to be due and owing would be governed by the Plan of Reorganization.

On or about June 21, 2019, Berman and Plaintiffs' Class Action counsel entered into a Stipulated Order Granting Limited Relief From Stay [ECF No. 70 (Berman Case)][2] ("Berman Relief From Stay Order") whereby the parties agreed and the Court ordered that the state court proceeding could continue to its completion at the trial level, and then continue on to resolve any and all subsequent appeals; provided, however, that any further rulings would not constitute a lien on any of Berman's property or assets, and any payment

---

[2] Reference to documents in the "Berman Case" refer to docket entries in Bankruptcy Case No. 19-60230-pcm11.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

of any amounts ultimately ruled to be due and owing would be governed by the Plan of Reorganization. Additionally, the parties agreed that the Class Action Plaintiffs' judgment lien would be promptly avoided pursuant to 11 U.S.C. § 547.

**D.     EMPLOYMENT OF PROFESSIONALS**

B. & J. has retained Tonkon Torp LLP as its general counsel in this case. B. & J. also sought and obtained Bankruptcy Court approval for the employment of (a) Saalfeld Griggs PC as its special purpose counsel, and (b) Fischer, Hayes, Joye & Allen LLC as its accountants. B. & J. and Berman also obtained an order authorizing the employment of Janet M. Schroer as special purpose counsel to represent them as appellate counsel in the Class Action Case. Ms. Schroer will be paid by the Oregon State Bar Professional Liability Fund as repair counsel based on the malpractice claim asserted against Saalfeld Griggs by Debtors.

Berman has retained Motschenbacher & Blattner LLP as its general counsel in the Berman Bankruptcy Case, and as appellate counsel in the Class Action Case. Berman also sought and obtained Bankruptcy Court approval for the employment of Fischer, Hayes, Joye & Allen LLC as his accountant. Berman may seek authority to employ alternate appellate counsel for the Class Action Case if appropriate.

**VI.     ASSETS AND LIABILITIES**

**A.     ASSETS**

**1.     B. & J.'s Real Property**

As described above, B. & J.'s principal asset is the Real Property containing the 158-unit RV park and 243-unit self-storage facility on a 9.06-acre parcel both located at 4490 Silverton Road, N.E., Salem, Oregon. Debtors estimate that the value of the Real Property was approximately $5,000,000 as of the B. & J. Petition Date.

As of the Petition Date, B. & J. held bare legal title to the Property and the RV Park and Storage business was operated by Better Business Management ("BBM"). BBM was in

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1 default under the lease with B. & J. and was insolvent as a result of the Class Action

2 judgment entered against it.  Thus, as of the Petition Date, B. & J. owned Property with an

3 insolvent tenant that was in default.  Such circumstances depressed the value of the Property.

4 In addition, the Property had been underperforming given that BBM had been charging

5 under-market rates.  Further, the Property had significant amounts of deferred maintenance,

6 which further depressed its value.  Although a prior appraisal had valued the Property at one

7 point at approximately $6 million, B. & J.'s owner believes that appraisal was too high and

8 given the present state of the Property as of the Petition Date, a $5 million valuation was

9 more accurate.  In any event, the Property value is expected to increase under the Plan since

10 B. & J. has taken possession of the Property and is now running an RV Park and Storage

11 business that it expects will be able to generate sufficient revenue to make the needed repairs

12 and improvements to increase the Property value during the life of the Plan.  Moreover, if

13 B. & J. is not able to generate sufficient funds to pay all Allowed Claims in full, then the

14 Property will be liquidated.  Upon liquidation, the value will be determined by the

15 marketplace.

16 **2.      Berman's Real Property**

17 Berman co-owns, with his wife, real property and a single family home in Salem,

18 Oregon.  Legal title to the home is held by the Berman Living Trust Dated October 21, 1997.

19 Berman estimates that the total value of the residence was approximately $568,060 as of the

20 Berman Petition Date.  Therefore, Berman estimates that the value of his 50% interest in the

21 residence was approximately $284,030 as of the Berman Petition Date.

22 **3.      Personal Property**

23 As of the Petition Date, B. & J.'s hard assets consisted of a 2017 Chevy suburban and

24 a 2001 New Holland tractor, as well as some miscellaneous office furniture and equipment

25 with little market value.  B. & J. had cash accounts as of the Petition Date in the total amount

26 of $114,209.26, and also had a receivable from Berman in the amount of $61,000.  This

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

original amount was reduced prepetition by $29,730, when B. & J. acquired Mr. and Ms. Berman's debt and collateral rights against BBM and its assets. After the Court order rejecting B. & J.'s lease with BBM, B. & J. acquired the personal property of BBM in satisfaction of that lien. The value of this additional property acquired postpetition is $29,730.

B. & J. has a receivable from William Lloyd Developments, Inc. in the total face amount of $1,837,322, of which $937,322 is a doubtful or uncollectable amount. This receivable is further subject to reduction based on a debt of $350,164 owed by B. & J. to William Lloyd Developments, Inc. A list of all of B. & J.'s assets can be found at Schedule A/B [ECF No. 89]. The collection of the full amount of the receivable from William Lloyd is doubtful since in the past 11 years William Lloyd has sold only one undeveloped lot. If payment were demanded immediately, the William Lloyd assets would need to be sold at depressed values resulting in a lower liquidation value and less funds to pay B. & J.

As of the Berman Petition Date, Berman's hard assets consisted of miscellaneous household goods and furnishings Berman co-owns with his wife. Berman also had checking accounts worth $35,937.53, and individual retirement accounts that Berman has claimed as fully exempt. Berman also owns stock or membership interests in the following entities: (a) 50% of the outstanding stock of B. & J., (b) 50% of the outstanding stock of BBM, (c) 28% of the outstanding stock of William Lloyd Investments, Inc., and (d) 20% of the outstanding membership interest in B. & J. Investments LLC. Berman is also owed $107,690.33, including interest, in relation to a loan that he and his wife made to William Lloyd Investments, Inc. A list of Berman's assets can be found in Berman's Amended Schedule A/B [ECF No. 44 (Berman Case)].

B. & J. is also owed reimbursement from BBM for legal fees ($302,603.25 paid and $293,354 unpaid) incurred in the Marion County Case and owed under an indemnity clause

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  in BBM's Lease with B. & J. — B. & J. does not expect to collect this amount as BBM is

2  now out of business and has no assets.

3      Debtors also have potential malpractice claims against Saalfeld Griggs LLP for legal

4  advice that resulted in the Class Action retaliation liability claim of $964,450, plus attorney

5  fees to be awarded, and legal advice that resulted in disregard of corporate status that resulted

6  in the class action judgment liability of $4,864,951 (which includes the retaliation liability

7  claim of $964,450), plus attorney fees to be awarded. Debtors have made demand on

8  Saalfeld Griggs for these claims and are negotiating a tolling agreement. Debtors dispute

9  their liability to the Class Action Creditors but if such liability is upheld on appeal, Debtors

10 believe they have valid claims against Saalfeld Griggs since Debtors relied upon and

11 followed Saalfeld Griggs' advice in conducting its business in the manner in which the state

12 court found to result in the retaliation liability and the successor liability of both Debtors.

13 Debtors intend to file an objection to Saalfeld Griggs' prepetition Claim and, as a result,

14 expect that no payments will be made on that Claim pending the conclusion of the

15 Class Action appeals and resolution of any malpractice claims against Saafeld Griggs.

16     Berman may also have a claim against his minor grandchildren, for gifts made to

17 those minors' college savings funds. Berman and his wife jointly contributed $21,740.57,

18 half of which was from Berman. As a result, Berman's potential claim equals $10,870.29,

19 which has been included in Berman's liquidation analysis attached as Exhibit 3.

20     **B.    LIABILITIES**

21         **1.    Columbia Credit Union**

22     According to the proof of claim filed by Columbia Credit Union, the amount of debt

23 owing to Columbia Credit Union as of the Petition Date is $2,225,037.38 in principal, plus

24 accrued interest in the amount of $918.05, and $3,412.50 in prepetition attorney fees and

25 costs. To secure its obligations, on September 11, 2015, B. & J. granted Columbia Credit

26 Union a security interest in the Real Property located at 4490 Silverton Road NE, Salem,

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

Oregon. Additionally, Berman executed and delivered a personal guaranty. A copy of Columbia Credit Union's Deed of Trust and the Berman Guaranty are attached to its Proof of Claim [Claim 3 (B. &. J. Case)].

### 2. Marion County Case Claim

A General Judgment was entered against Debtor, BBM, and Mr. Berman on October 31, 2018, in the sum of $3,900,501 on the electrical charge claims to the Main Class members, plus $964,450 to the Retaliation Sub-Class members. In addition, plaintiffs have requested attorney fees of $1,100,000 and costs of $52,378.39. Debtors expect they will prevail in the appeal of the Marion County Case, and that as a result all creditors except the Class Action Claim plaintiffs will be paid in full. If Debtors do not prevail in the appeal of the Marion County Case, B. & J. will pursue the malpractice claims against Saalfeld Griggs and if sufficient recovery is not made therefrom, will then liquidate its assets.

### 3. Unsecured and Class Action Creditors

The total amount of Unsecured Claims scheduled by B. & J. or filed by Creditors against B. & J. is approximately $751,182.49 (excluding claims filed by the Class Action Creditors which were listed as disputed). The total filed claims against B. & J. is approximately $7,845,738.24 including the Class Action ClaiMs. This amount excludes any duplication for scheduled and filed claims and does not include anticipated costs and attorney fees to be awarded to the Class Action Plaintiffs in the Class Action Case.

The total amount of Unsecured Claims scheduled by Berman or filed by Creditors against Berman is approximately $355,785.49 (excluding the Columbia Guaranty Claim, which is to be paid by B. & J., and claims filed by the Class Action Creditors which were listed as disputed). The total amount of filed claims against Berman is approximately $7,763,541.53. This amount excludes any duplication for scheduled and filed claims.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

# VII. DESCRIPTION OF PLAN

## A. BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors, and its equity holders. Confirmation of a plan of reorganization is the principal objective of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against, and interests in, a debtor. Confirmation of a plan of reorganization by a bankruptcy court makes the plan binding upon the debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor and any equity holder of the debtor. Subject to certain limited exceptions provided by the Bankruptcy Code, and except as specifically provided in the Plan of Reorganization, the confirmation order discharges debtor from any debt that arose prior to the date of such confirmation and order and substitutes therefore the obligations specified in the plan.

## B. SOLICITATION, CLASSIFICATION, AND TREATMENT OF CLAIMS AND EQUITY SECURITIES

### 1. General

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, a Plan of Reorganization must designate classes of Claims and classes of Interests. The Plan classifies all Claims and Interests into four classes. The classification of Claims and Interests is made for the purpose of voting on the Plan and making distributions thereunder, and for ease of administration of the Plan. A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in a different Class to the extent the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is entitled to vote in a particular Class and to receive distributions in such Class only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid prior to the Effective Date. Under the Plan, a Claim or

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Interest is an Allowed Claim against, or an Allowed Interest in, Debtor to the extent that (a) a proof of the Claim or Interest was (1) timely filed, or (2) deemed filed under applicable law by reason of an order of the Bankruptcy Court; or (b) scheduled by Debtor on its Schedules of Liabilities as neither contingent, unliquidated, or disputed; and (c) (i) no party-in-interest has filed an objection within the time fixed by the Bankruptcy Court, (ii) the Claim or Interest is allowed by Final Order; or (iii) with respect to an application for compensation or reimbursement of an Administrative Expense Claim, the amount of the Administrative Expense Claim has been approved by the Bankruptcy Court.

## 2. Unclassified Claims

Administrative Expense Claims and Priority Tax Claims are not classified. An Administrative Expense Claim is a Claim against Debtors constituting an expense of administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code including, without limitation, the actual and necessary costs and expenses of preserving the estate and operating Debtors' business during the Bankruptcy Case; claims for the value of goods received by Debtors within 20 days before the Petition Date sold in the ordinary course of business; any indebtedness or obligations incurred by Debtors during the pendency of the Bankruptcy Case in connection with the provision of goods or services to Debtors; compensation for legal and other professional services and reimbursement of expenses; and statutory fees payable to the U.S. Trustee.

A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the Secured status of the Claim. Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtors within 30 days following the Effective Date or the date the Claim is Allowed, whichever is sooner, the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D). The IRS has filed a Priority

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Tax Claim against B. & J. in the amount of $336.82, and against Berman in the amount of $100.

Pursuant to the Plan of Reorganization, Administrative Expense Claims will be paid in full on the later of the Effective Date or the date on which any such Administrative Expense Claim becomes an Allowed Claim unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute, or regulation governing such Claim).  However, the Administrative Expense Claims representing liabilities incurred in the ordinary course of business (including amounts owed to vendors and suppliers that have sold goods or furnished services to Debtors after the Petition Date), if any, will be paid in accordance with the terms and conditions of the particular transactions and any other agreements relating thereto. Debtor will include the estimated amount of such expenses in the Report of Administrative Expense Claims to be filed prior to the hearing on confirmation.

**3.     Classified Claims**

The following summary of distributions under the Plan to Classified Claims does not purport to be complete and is subject to, and is qualified in its entirety by reference to, the Plan included herewith.

(a)     <u>Class 1 (Columbia Credit Union's Secured Claim Against B. & J.)</u>. Columbia Credit Union ("Columbia") has a first-position security interest in B. & J.'s real property located at 4490 Silverton Road NE, Salem, Oregon, to secure its Allowed Secured Claim.  Columbia will retain its interest in its Collateral with the same priority that it had on the Petition Date.  Columbia will be paid the full amount of its Allowed Secured Claim in accordance with the existing terms of its loan to Debtor except for the changes to terms and covenants as detailed in the Plan.  The payments to Columbia from B. & J. will be approximately $14,080 per month.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

(b) Class 2 (Columbia's Unsecured Guaranty Claim Against Berman). Columbia has an unsecured claim against Berman pursuant to his personal guaranty of B. & J.'s debt to Columbia. Berman will remain liable to Columbia under the personal guaranty in accordance with the existing terms of Columbia's loan to B. & J. except for the changes to terms and covenants as detailed in the Plan.

(c) Class 3 (Quicken Loans' Secured Claim Against Berman). Quicken Loans, Inc. ("Quicken Loans") has a first-position security interest in Berman's personal residence in Salem, Oregon, to secure its Allowed Secured Claim. The Class 3 claim is unimpaired and not entitled to vote on the Plan. Quicken Loans will be paid the full amount of its Allowed Secured Claim in accordance with the existing terms of its loan to Berman.

(d) Class 4 (General Unsecured Claims Against B. & J.). Each Class 4 Unsecured Claim against B. & J. will be paid in full, together with interest at the federal judgment rate in effect on the Effective Date, from and after the Effective Date, as follows: (i) commencing on the first day of the first full month following the Effective Date, General Unsecured Creditors will be paid monthly payments of interest only, at the federal judgment rate, for 24 months; and (ii) commencing on the first day of the 25th month following the Effective Date, General Unsecured Creditors will be paid the full balance of their claims in equal amortizing monthly payments, including principal and interest at the federal judgment rate, for the next 36 months; provided, however, that if the appeal of the Class Action Case is not successful and funds are due and owing to the Class 6 Claimants under a Final Order, then payments made to Class 4 Claims up to that point will be recharacterized as payments of principal only and Class 4 Claims shall share pro rata in the liquidation of assets described in Class 6 below on a pari passu basis with Class 6 Unsecured Claims, with no further payments being made to Class 4 Claims until such time as payments

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

to Class 6 Unsecured Claims have caught up and are on par with the percentage previously received by Class 4 Claims.

(e) <u>Class 5 (General Unsecured Claims Against Berman)</u>. Each General Unsecured Claim against Berman will be paid first from B. & J. under Class 4, and any balance remaining shall be paid its pro rata share of funds held in the "Berman Unsecured Claims Fund," which shall be created and funded by Berman from his earnings after the Effective Date. The amount to be paid by Berman into the Berman Unsecured Claims Fund is $1,000 per month for five years, or until $60,000 has been deposited by Berman, or such other amount as is required by the Bankruptcy Court. The Class 5 creditors' pro rata share of the Berman Unsecured Claims Fund shall be calculated from the total amount of Class 5 and Class 7 claims.

(f) <u>Class 6 (Class Action Claims Against B. & J.)</u>. Each holder of an Allowed Claim as a result of a Final Order entered in the Class Action Litigation and appeals will be paid the full amount ultimately awarded by the Court, if any, if B & J. has sufficient assets to make such payments and, if not, from the pro rata Net Proceeds from the closing down/liquidation and sale of B. & J.'s business and assets, as follows:

Upon entry of a Final Order on the Class Action Claims, Reorganized B. & J. will pay Allowed Class Action Claims, whether Secured or Unsecured, within 12 months after any order entered in the Class Action Case becomes a Final Order. To the Extent Reorganized B. & J. does not have sufficient funds to pay the Allowed Class 6 Claims from available cash, then Reorganized B. & J. shall first seek to pursue the malpractice claims against Saalfeld Griggs in order to recover the full amounts owing to the Class Action ClaiMs. If recovery against Saalfeld Griggs is not successful, then Reorganized B. & J. will seek to refinance the Real Property to generate Net Proceeds in a sufficient amount to pay the Allowed Class 6 ClaiMs. If

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Reorganized B. & J. is unable to refinance the Real Property, then

Reorganized B. & J. shall proceed to sell the Real Property and liquidate all its

remaining assets, with the Net Proceeds from the Real Property to be paid first

in full satisfaction of the Allowed Class 6 Secured Claims and thereafter to the

Allowed Class 4 and Class 6 Unsecured ClaiMs.  If the Net Proceeds are

insufficient to pay Allowed Unsecured Claims in full, then each Unsecured

Claimant shall be paid its pro rata share of the amount owed to all Allowed

Class 4 and 6 Unsecured ClaiMs.  Proceeds from the malpractice claims

against Saalfeld Griggs, Net Proceeds of the refinancing, or Net Proceeds

from the sale of the Real Property and liquidation of assets shall first be paid

to the Class 6 Unsecured Claims until such payments equal the same

percentage that Class 4 Claims have received to date, and thereafter Class 4

and Class 6 Unsecured Claims shall be paid from available funds on a pro rata

basis.

(g)     Class 7 (Class Action Claims Against Berman).  Each holder of

an Allowed Claim as a result of a Final Order entered in the Class Action Litigation and

appeals will first be paid the full amount ultimately awarded by the Court, if any, if B & J.

has sufficient assets to make such payments and, if not, from the pro rata proceeds from the

closing down/liquidation and sale of B. & J.'s business and assets.  Any Class 7 Claims that

remain after payment is made by B. & J. shall be paid a pro rata share of the Berman

Unsecured Claims Fund described above.  The Class 7 creditors' pro rata share of the

Berman Unsecured Claims Fund shall be calculated from the total amount of Class 5 and

Class 7 claims.

(h)     Class 8 (Interests in B. & J.).  The Plan provides that holders of

Class 8 Interests will retain their interest in Reorganized B. & J., except in the event there are

insufficient funds to pay Creditors, in which case the interest will be of no value.

**Page 28 of 40** -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1           (i)  <u>Class 9 (Berman's Interest in Estate)</u>.  The Plan provides that

2   Berman shall retain his interest in the property of his bankruptcy estate.

3      **C.**  **ADMINISTRATIVE EXPENSES**

4      B. & J. has retained the following professionals: (1) Tonkon Torp LLP as its general

5   counsel in this case, (2) Saalfeld Griggs PC as its special purpose counsel, and (3) Fischer,

6   Hayes, Joye & Allen LLC as its accountants.  The total amount of Administrative Expense

7   Claims is uncertain at this time.  It is anticipated that some professionals may agree to defer

8   payment of their Administrative Claim, if necessary.  A statement of professional fees

9   incurred in this case will be filed with the Court prior to the confirmation hearing.

10     Berman has retained the following professionals:  (1) Motschenbacher & Blattner

11  LLP as his general bankruptcy counsel in this case, and as appellate counsel in the

12  Class Action, and (2) Fischer, Hayes, Joye & Allen LLC as his accountants.  The total

13  amount of Administrative Expense Claims is uncertain at this time.  It is anticipated that

14  some professionals may agree to defer payment of their Administrative Claim, if necessary.

15  A statement of professional fees incurred in this case will be filed with the Court prior to the

16  confirmation hearing.

17     **D.**  **EXECUTORY CONTRACTS**

18     The Bankruptcy Code gives Debtors the right, after commencement of their

19  Chapter 11 Cases, subject to approval of the Bankruptcy Court, to assume or reject executory

20  contracts and unexpired leases.  Generally, an "executory contract" is a contract under which

21  material performance (other than the payment of money) is still due by each party.  The Plan

22  provides for the assumption by debtors of all executory contracts and unexpired leases that

23  are not expressly rejected or subject to a motion for rejection filed on or before the

24  Confirmation Date.

25     If an executory contract or unexpired lease is or has been rejected, the other party to

26  the agreement may file a Proof of Claim for damages resulting from such rejection.  The Plan

**Page 29 of 40** -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

provides that a Proof of Claim with respect to any such Claim must be filed within 30 days of approval of the Bankruptcy Court of the rejection of the relevant executory contract or unexpired lease. Any such Claim shall constitute a Class 2 Claim to the extent such Claim is finally treated as an Allowed Claim. To the extent a debtor rejects an unexpired lease of nonresidential real property, the Claim for damages resulting from such rejection will be limited to the amount allowed under the Bankruptcy Code.

Upon assumption of an executory contract or unexpired lease, debtors must cure or provide adequate assurance of prompt cure of any monetary defaults. The Plan provides that Reorganized Debtors will promptly cure all monetary defaults.

### E. EFFECT OF CONFIRMATION

#### 1. Binding Effect

The treatment of, and consideration received by, holders of Allowed Claims and Interests pursuant to the Plan will be in full satisfaction of their respective Claims against or Interests in Debtors. The Confirmation Order shall bind Debtors and any Creditor, and discharge Debtors from any liability that arose before the Effective Date as provided in Sections 524 and 1141 of the Bankruptcy Code, and any debt and liability of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based on such Creditor's debt or liability is Filed or deemed Filed under Section 501 of the Bankruptcy Code, (b) a Claim based on such debt or liability is Allowed, or (c) the holder of the Claim based on such debt or liability has accepted the Plan.

#### 2. Revesting, Operation of Business

All property of the bankruptcy estates shall revest in each respective Reorganized Debtor on the Effective Date free and clear of all rights, claims, liens, charges, encumbrances, and interests, except as otherwise specifically provided in the Plan. Except as otherwise set forth in the Plan, there are no limitations or restrictions on the post-confirmation activities or operations of Debtors.

**Page 30 of 40** - DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

### 3. Injunction

The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan, prior order of the Bankruptcy Court, or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding of any kind against Debtors or Reorganized Debtors that was or could have been commenced before entry of the Confirmation Order; (b) the enforcement, attachment, collection, or recovery against Reorganized Debtors or their assets of any judgment, award, decree, or order obtained before the Petition Date; (c) any act to obtain possession of or to exercise control over, or to create, perfect, or enforce a lien upon all or any part of the assets of Reorganized Debtors; (d) asserting any setoff or right of subrogation or recoupment of any kind against any obligation due to Debtors, Reorganized Debtors, or their property; and (e) proceeding in any manner in any place whatsoever that does not conform to, does not comply with, or is inconsistent with the provisions of the Plan or the Confirmation Order. Neither the injunction nor any provision of the Plan prohibits or otherwise overrides the Stipulated Relief From Stay Order which allows the Marion County Case to proceed to completion in state court, including all appeals.

### 4. Event of Default

Any material failure by Reorganized Debtors to perform any term of the Plan, which failure continues for a period of 15 Business Days following receipt by Reorganized Debtors of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default. Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, the Plan, or any agreement between the holder of such Claim and Debtors or

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Reorganized Debtors. An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

### 5.     Modification of Plan; Revocation or Withdrawal of Plan

Subject to Section 1127 of the Bankruptcy Code, Debtors reserve the right to alter, amend, modify, or withdraw the Plan before its substantial consummation so long as the treatment of holders of Claims and Equity Security Holders under the Plan are not adversely affected.

### 6.     Retention of Jurisdiction

Notwithstanding entry of the Confirmation Order, the Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and:

(a)     to classify the Claim or interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes, and determine any objections that may be Filed to Claims or Interests;

(b)     to determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the Estates;

(c)     to avoid liens, transfers, or obligations, or to subordinate Claims under Chapter 5 of the Bankruptcy Code;

(d)     to approve the assumption, assignment, or rejection of an executory contract or an unexpired lease pursuant to this Plan;

(e)     to resolve controversies and disputes regarding the interpretation of this Plan;

(f)     to implement the provisions of this Plan and enter orders in aid of confirmation;

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    (g)    to adjudicate adversary proceedings and contested matters

2    pending or hereafter commenced in this Chapter 11 Case; and

3    (h)    to enter a final decree closing this Chapter 11 proceeding.

4    **7.    United States Trustee Fees**

5    Fees payable by Debtors under 28 U.S.C. § 1930, or to the Clerk of the Bankruptcy

6    Court, will be paid in full in Cash on the Effective Date.  All quarterly fees due to the United

7    States Trustee pursuant to 28 USC § 1930(a), including fees due for any partial quarter,

8    accruing after the Effective Date shall be paid by the Reorganized Debtors as and when they

9    become due and will be based on the Reorganized Debtors' total disbursements, including

10   ordinary course of business disbursements as well as disbursements made to Claimants under

11   this Plan.  Such fee obligations will not terminate until this Case is converted or dismissed, or

12   until this Case is no longer pending upon entry of a Final Order closing this Case, whichever

13   first occurs, and all United States Trustee fees, including any such fees accrued in any partial

14   quarter, shall be paid as a condition precedent prior to entry of an order closing the

15   case.  After the Effective Date, the Reorganized Debtors shall file with the Court a post-

16   confirmation monthly financial report for each month, or portion thereof, that the case is

17   open or during any period of time that the case is reopened. The monthly financial report

18   shall include a statement of all disbursements made during the course of the month, whether

19   or not pursuant to the Plan.  All United States Trustee fees, including any such fees accrued

20   in any partial quarter, shall also be paid as a condition precedent prior to entry of a Final

21   Decree.

22   **VIII.   LIQUIDATION ANALYSIS**

23   A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds that

24   the Plan is in the "best interest of creditors" or holders of Claims against, and Equity Security

25   in, Debtors subject to such plan.  The best interest test is satisfied if a plan provides each

26   dissenting or non-voting member of each impaired Class with a recovery not less than the

**Page 33 of 40** - DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  recovery such member would receive if each Debtor was liquidated in a hypothetical case

2  under Chapter 7 of the Bankruptcy Code by a Chapter 7 Trustee.  Debtors believe the holders

3  of impaired Claims will not receive less than they would receive under a Chapter 7

4  liquidation.  In applying the "best interest" test, the Bankruptcy Court would ascertain the

5  hypothetical recovery in a Chapter 7 proceeding to Secured Creditors, priority claimants,

6  General Unsecured Creditors, and Equity Interest Holders.  The hypothetical Chapter 7

7  recoveries would then be compared with the distribution offered to each Class of Claims or

8  Equity Security Holders under the Plan to determine that the Plan satisfied the "best interest"

9  test set forth in the Bankruptcy Code.

10      A Chapter 7 liquidation of B. & J.'s case would result in the immediate cessation of

11  B. & J.'s operations.  Substantially all assets would be liquidated and distributed to the

12  Secured Creditors, with Columbia Credit Union likely realizing its full $2,225,037 secured

13  claim amount plus default interest, costs, and fees, and the remaining General Unsecured,

14  Litigation, and Equity Classes realizing less than the amount proposed under the Plan.

15      A Chapter 7 liquidation of Berman's case would result in the immediate cessation of

16  Berman's primary source of income.  Berman's non-exempt assets would be liquidated and

17  approximately $43,703.33 would be available for distribution to all creditors, including

18  Columbia's $2,225,037 claim on Berman's personal guaranty.  Calculations for a

19  hypothetical Berman liquidation are set forth on the Liquidation Analysis attached hereto as

20  **Exhibit 3**.  The amount available in a Berman liquidation is less than the Berman Unsecured

21  Claims Fund, and thus General Unsecured, Class Action, and Equity Classes would receive

22  less in a Chapter 7 than the amount proposed under the Plan.

23  **IX.     POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

24      CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE

25  PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR

26  OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

The following discussion summarizes in general terms certain federal income tax consequences of implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice. This summary does not address the federal income tax consequences of the Plan to holders of priority or secured claims, nor does it address any state, local, or foreign tax matters, or the federal income tax consequences to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations, and foreign taxpayers) to which special rules may apply. No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan.

THIS ANALYSIS DOES NOT ADDRESS THE TAX IMPLICATIONS OF THE PLAN TO ANY SPECIFIC CREDITOR. Substantial differences in the tax implications are likely to be encountered by creditors because of the difference in the nature of their Claims, taxpayer status, method of accounting, and the impact of prior actions they may have taken with respect to their Claims.

The following are the anticipated tax consequences of the Plan.

**A.      TAX CONSEQUENCES TO DEBTORS**

Debtors do not anticipate any extraordinary or unusual tax consequences because all claims are expected to be paid in full. Debtors will experience ordinary income from continued operations and earnings, and will be entitled to deduct business expenses for any business related and interest expenses. Debtors do not anticipate any cancellation of debt income. In the event B. & J. sells its real property, B. & J. shall pay any applicable capital gains taxes that result from the sale.

**B.      GENERAL TAX CONSEQUENCES ON CREDITORS**

Creditors will likely not experience any unusual or extraordinary tax consequence following Confirmation of the Plan. Payments will be treated in the same manner as they

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

were treated before Confirmation of the Plan.  As discussed above, the effect of the Plan on specific creditors will depend on specific financial information relative to such creditor and that is unknown to Debtors.  As a result, the tax implications to specific creditors cannot be completely described herein.

EACH HOLDER IS URGED TO CONSULT SUCH HOLDER'S OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO SUCH HOLDER UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND FOREIGN TAX LAWS. DEBTORS AND DEBTORS' COUNSEL EXPRESS NO OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN OR THE EFFECT THEREOF ON ANY CLAIMANT.

## X.    ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A.    CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on _____, 2019 at ____.m Pacific time.  The hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, 1050 SW Sixth Avenue, #700, Portland, Oregon in Courtroom No. _____, before the Honorable _____, United States Bankruptcy Judge.  At that hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interest of Creditors and Equity Security Holders of Debtors. Debtors will submit a report to the Bankruptcy Court prior to the hearing concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote thereon.  Any objection to confirmation of the Plan must be timely filed on or before _____, 2019 to be considered by the Court.

### B.    REQUIREMENTS OF CONFIRMATION

At the hearing on confirmation, the Bankruptcy Court will determine whether the provisions of Section 1129 of the Bankruptcy Code have been satisfied.  If all of the provisions of Section 1129 are met, the Bankruptcy Court may enter an order confirming the

**Page 36 of 40** -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

1    Plan.  Debtor believes the Plan satisfies all the requirements of Chapter 11 of the Bankruptcy

2    Code, that it has complied or will have complied with all of the requirements of Chapter 11,

3    and that the Plan has been proposed and is made in good faith.

4           With respect to Berman's Plan, the "Absolute Priority Rule" will apply in the event

5    that all of the following occur: (1) Debtors are unsuccessful on their appeal, (2) the Class

6    Action Creditors do not accept the Plan, (3) the Class Action Claims are not fully paid by

7    B. & J., and (4) the remainder of the Class Action Claims are not paid in full from the

8    Berman Unsecured Claims Fund.  The Absolute Priority Rule provides that unsecured

9    creditors in a dissenting impaired class must be satisfied in full before the debtor is allowed

10   to retain any property under the plan.  In Berman's case, Berman proposes to retain

11   approximately $97,665.13 of non-exempt property.  Specifically, the non-exempt portion of

12   equity in his residence, and the amount of cash Berman held on hand and in his checking

13   account on the Petition Date.  In the event the Absolute Priority Rule applies, Berman

14   proposes to obtain a loan from family or from a financial institution to pay the Class Action

15   Claims the lesser of $98,000, or the amount needed to pay the remaining balance of the Class

16   Action ClaiMs.  See Section 7.7 of the Plan.

17           **C.     CRAMDOWN**

18           A Court may confirm a Plan, even if it is not accepted by all impaired classes, if the

19   Plan has been accepted by at least one impaired class of claims and the Plan meets the

20   cramdown requirements set forth in Section 1129(b) of the Bankruptcy Code.  In the event

21   any impaired Class of Claims does not accept the Plan, Debtor hereby requests the

22   Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy

23   Code or otherwise permit Debtors to modify the Plan.

24           **D.     FEASIBILITY**

25           Debtors believe that confirmation of the Plan is not likely to be followed by the

26   liquidation of either of the Reorganized Debtors or a need for a further financial

**Page 37 of 40** -  DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8,
2019)

888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

1 reorganization of Reorganized Debtors.  The projections of B. & J.'s post-confirmation

2 business, attached hereto as **Exhibit 1**, show sufficient earnings and cash flow from

3 operations to support and meet the ongoing financial needs of Reorganized B. & J.  The

4 projections indicate that the Plan as proposed by Debtors is feasible and that Reorganized

5 Debtors will be financially viable after confirmation of the Plan or B. & J. shall liquidate.

6 The ultimate payout to the Class Action Creditors will be dependent on the result of the state

7 court appeals.  If the Class Action Creditors prevail in full, then the likely result is that

8 B. & J. will be liquidated.  The Plan provides for such a liquidation and, as such, it is feasible

9 even if Debtors do not prevail on the appeal.

10 ## E.    CONFIRMATION REQUIREMENTS FOR INDIVIDUAL DEBTOR

11 To confirm the Plan, the Court must find that "the value of the property to be

12 distributed under the plan is not less than the projected disposable income of Debtor (as

13 defined in Section 1325(b)(2)) to be received during the five-year period beginning on the

14 date the first payment is due under the Plan, or during the period for which the Plan provides

15 payments, whichever is longer." 11 U.S.C. § 1129(a)(15)(B).  The Plan proposes to pay

16 Berman's creditors from the Berman Unsecured Claims Fund, which will be funded with

17 Berman's projected disposable income (as defined in Section 1325(b)(2)) to be received by

18 Berman during the five-year period beginning on the Effective Date.  See **Exhibit 2**, attached

19 hereto.  The Plan therefore complies with Section 1129(a)(15)(B).

20 ## F.    ALTERNATIVES TO CONFIRMATION OF THE PLAN

21 If a Plan is not confirmed, Debtors or another party-in-interest may attempt to

22 formulate or propose a different Plan or Plans of Reorganization.  Such Plans might involve a

23 reorganization and continuation of B. & J.'s business, a sale of B. & J.'s business as a going

24 concern, an orderly liquidation of B. & J.'s assets, or any combination thereof.  If no Plan of

25 Reorganization is determined by the Bankruptcy Court to be confirmable, the Chapter 11

26 case may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1         In a liquidation, a Chapter 7 Trustee would be appointed with the purpose of

2 liquidating the assets of Debtors.  Typically, in liquidation, assets are sold for less than their

3 going concern value and, accordingly, the return to Creditors and Interest holders is less than

4 the return in a reorganization, which derives the value to be distributed in a Plan from the

5 business as a going concern.  Proceeds from liquidation would be distributed to Creditors and

6 Interest holders of Debtors in accordance with the priorities set forth in the Bankruptcy Code.

7         Debtors believe there is no currently available alternative that would offer holders of

8 Claims and Interests in Debtors greater than the Plan and urges all parties entitled to vote on

9 the Plan to vote to accept the Plan.

10 **XI.    CONCLUSION**

11         Please read this Disclosure Statement and the Plan carefully.  After reviewing all the

12 information and making an informed decision, please vote by using the enclosed ballot.

13         DATED this 8th day of October, 2019.

14                               Respectfully submitted,

15                               B. & J. PROPERTY INVESTMENTS, INC.

16

17                               By */s/ William J. Berman*

18                                   William J. Berman, President

19

20                               By */s/ William J. Berman*
                                  William J. Berman, Personally

21

22

23

24

25

26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Presented by:

TONKON TORP LLP


By */s/ Timothy J. Conway*
    Timothy J. Conway, OSB No. 851752
    Ava L. Schoen, OSB No. 044072
    888 S.W. Fifth Avenue, Suite 1600
    Portland, OR 97204-2099
    Telephone: (503) 221-1440
    Facsimile: (503)274-8779
    Email: tim.conway@tonkon.com
             ava.schoen@tonkon.com
    Attorneys for B. & J. Property Investments, Inc.

MOTSCHENBACHER & BLATTNER, LLP


By */s/ Nicholas J. Henderson*
    Nicholas J. Henderson, OSB No. 074027
    Telephone: (503) 417-0508
    Facsimile: (503) 417-0528
    Email: nhenderson@portlaw.com
    Attorneys for William J. Berman


**EXHIBITS ATTACHED**:

Exhibit 1:      B. & J. Financial Projections
Exhibit 2:      Berman Projected Disposable Income Calculation
Exhibit 3:      Berman Liquidation Analysis

038533/00002/10363069v6

**Page 40 of 40** - DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)

# EXHIBIT 1

## B. & J. FINANCIAL PROJECTIONS

Exhibit 1 - B. & J. Financial Projections

# B&J Property Investments Budget Forecast 2019

| | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 | TOTALS |
|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | |
| R.V. SPACE RENTS | $66,754 | $66,754 | $66,754 | $66,754 | $66,754 | $66,754 | $400,524 |
| SPACE ELECTRIC | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $48,000 |
| MINI STORAGE RENTS | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $110,250 |
| STORE INCOME | $325 | $325 | $325 | $325 | $325 | $325 | $1,950 |
| | $93,454 | $93,454 | $93,454 | $93,454 | $93,454 | $93,454 | $560,724 |
| **EXPENSES** | | | | | | | |
| STORAGE RENT/DEP REFUND | $70 | $70 | $70 | $70 | $70 | $70 | $420 |
| RV RENT/DEP REFUND | $180 | $180 | $180 | $180 | $180 | $180 | $1,080 |
| SPACE ELECTRICITY | $9,300 | $9,300 | $9,300 | $9,300 | $9,300 | $9,300 | $55,800 |
| MISC | $554 | $554 | $554 | $554 | $554 | $554 | $3,321 |
| FACILITY ELECTRICITY | $604 | $604 | $604 | $604 | $604 | $604 | $3,622 |
| NW GAS | $330 | $330 | $330 | $330 | $330 | $330 | $1,979 |
| WATER/SEWER | $2,796 | $2,796 | $2,796 | $2,796 | $2,796 | $2,796 | $16,779 |
| CABLE TV | $3,134 | $3,134 | $3,134 | $3,134 | $3,134 | $3,134 | $18,807 |
| TELEPHONE | $400 | $400 | $400 | $400 | $400 | $400 | $2,400 |
| TELEPHONE AD | $298 | $298 | $298 | $298 | $298 | $298 | $1,790 |
| GARBAGE | $2,346 | $2,346 | $2,346 | $2,346 | $2,346 | $2,346 | $14,076 |
| OFFICE SUPPLY | $273 | $273 | $273 | $273 | $273 | $273 | $1,635 |
| SCREENINGS | $132 | $132 | $132 | $132 | $132 | $132 | $790 |
| MAINTENANCE | $1,121 | $1,121 | $1,121 | $1,121 | $1,121 | $1,121 | $6,728 |
| ADS | $6 | $6 | $6 | $6 | $6 | $6 | $34 |
| FREIGHT/POSTAGE | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| RECREATION | $145 | $145 | $145 | $145 | $145 | $145 | $870 |
| STORE STOCK | $200 | $200 | $200 | $200 | $200 | $200 | $1,200 |
| MANAGEMENT FEES | $29,000 | $29,000 | $29,000 | $29,000 | $29,000 | $29,000 | $174,000 |
| MEDICAL | $3,503 | $3,503 | $3,503 | $3,503 | $3,503 | $3,503 | $21,017 |
| AUTO | $350 | $350 | $350 | $350 | $350 | $350 | $2,100 |
| LEGAL/ACCOUNTING | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $12,000 |
| INSURANCE | $0 | $0 | $0 | $14,000 | $0 | $0 | $14,000 |
| CAPITAL IMPROVEMENTS | $0 | $15,000 | $0 | $0 | $0 | $0 | $15,000 |
| CONTINGENCY FUND | $7,300 | $7,300 | $7,300 | $7,300 | $7,300 | $7,300 | $43,800 |
| PROPERTY TAXES | $0 | $0 | $0 | $64,000 | $0 | $0 | $64,000 |
| | 64,041 | 79,041 | 64,041 | 142,041 | 64,041 | 64,041 | 477,247 |
| **SECURED LENDER** | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $84,481 |
| **TOTAL OPERATING EXPENSES** | $78,121 | $93,121 | $78,121 | $156,121 | $78,121 | $78,121 | $561,728 |
| **OPERATING INCOME** | $15,333 | $333 | $15,333 | -$62,667 | $15,333 | $15,333 | -$1,004 |

Exhibit 1 - Page 1 of 3

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

Exhibit 1 - B. & J. Financial Projections

## B&J Property Investments Budget Forecast 2020

| | Jan-20 | Feb-20 | Mar-20 | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 | Oct-20 | Nov-20 | Dec-20 | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| R.V. SPACE RENTS | $66,754 | $66,754 | $66,754 | $66,754 | $66,754 | $68,089 | $72,135 | $72,135 | $72,135 | $72,135 | $72,135 | $72,135 | $834,669 |
| SPACE ELECTRIC | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,160 | $8,160 | $8,160 | $8,160 | $8,160 | $8,160 | $8,160 | $97,120 |
| MINI STORAGE RENTS | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $220,500 |
| STORE INCOME | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $3,900 |
| | $93,454 | $93,454 | $93,454 | $93,454 | $93,454 | $94,949 | $98,995 | $98,995 | $98,995 | $98,995 | $98,995 | $98,995 | $1,156,189 |
| **EXPENSES** | | | | | | | | | | | | | |
| STORAGE RENT/DEP REFUND | $70 | $71 | $71 | $71 | $71 | $71 | $71 | $71 | $71 | $71 | $71 | $71 | $855 |
| RV RENT/DEP REFUND | $180 | $184 | $184 | $184 | $184 | $184 | $184 | $184 | $184 | $184 | $184 | $184 | $2,200 |
| SPACE ELECTRICITY | $9,300 | $9,300 | $9,300 | $9,300 | $9,300 | $9,486 | $9,486 | $9,486 | $9,486 | $9,486 | $9,486 | $9,486 | $112,902 |
| MISC | $554 | $565 | $565 | $565 | $565 | $565 | $565 | $565 | $565 | $565 | $565 | $565 | $6,765 |
| FACILITY ELECTRICITY | $604 | $616 | $616 | $616 | $616 | $616 | $616 | $616 | $616 | $616 | $616 | $616 | $7,377 |
| NW GAS | $330 | $336 | $336 | $336 | $336 | $336 | $336 | $336 | $336 | $336 | $336 | $336 | $4,030 |
| WATER/SEWER | $2,796 | $2,852 | $2,852 | $2,852 | $2,852 | $2,852 | $2,852 | $2,852 | $2,852 | $2,852 | $2,852 | $2,852 | $34,172 |
| CABLE TV | $3,134 | $3,197 | $3,197 | $3,197 | $3,197 | $3,197 | $3,197 | $3,197 | $3,197 | $3,197 | $3,197 | $3,197 | $38,303 |
| TELEPHONE | $400 | $408 | $408 | $408 | $408 | $408 | $408 | $408 | $408 | $408 | $408 | $408 | $4,888 |
| TELEPHONE AD | $298 | $304 | $304 | $304 | $304 | $304 | $304 | $304 | $304 | $304 | $304 | $304 | $3,645 |
| GARBAGE | $2,346 | $2,393 | $2,393 | $2,393 | $2,393 | $2,393 | $2,393 | $2,393 | $2,393 | $2,393 | $2,393 | $2,393 | $28,668 |
| OFFICE SUPPLY | $273 | $278 | $278 | $278 | $278 | $278 | $278 | $278 | $278 | $278 | $278 | $278 | $3,331 |
| SCREENINGS | $132 | $134 | $134 | $134 | $134 | $134 | $134 | $134 | $134 | $134 | $134 | $134 | $1,609 |
| MAINTENANCE | $1,121 | $1,144 | $1,144 | $1,144 | $1,144 | $1,144 | $1,144 | $1,144 | $1,144 | $1,144 | $1,144 | $1,144 | $13,702 |
| ADS | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $69 |
| FREIGHT/POSTAGE | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| RECREATION | $145 | $148 | $148 | $148 | $148 | $148 | $148 | $148 | $148 | $148 | $148 | $148 | $1,772 |
| STORE STOCK | $200 | $204 | $204 | $204 | $204 | $204 | $204 | $204 | $204 | $204 | $204 | $204 | $2,444 |
| MANAGEMENT FEES | $29,000 | $29,580 | $29,580 | $29,580 | $29,580 | $29,580 | $29,580 | $29,580 | $29,580 | $29,580 | $29,580 | $29,580 | $354,380 |
| MEDICAL | $3,503 | $3,503 | $4,028 | $4,028 | $4,028 | $4,028 | $4,028 | $4,028 | $4,028 | $4,028 | $4,028 | $4,028 | $47,288 |
| AUTO | $350 | $357 | $357 | $357 | $357 | $357 | $357 | $357 | $357 | $357 | $357 | $357 | $4,277 |
| LEGAL/ACCOUNTING | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $24,000 |
| INSURANCE | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $85,000 | $0 | $0 | $0 | $0 | $85,000 |
| CAPITAL IMPROVEMENTS | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $14,500 | $0 | $0 | $14,500 |
| CONTINGENCY FUND | $8,800 | $8,800 | $8,800 | $8,800 | $8,800 | $8,800 | $8,800 | $8,800 | $8,800 | $8,800 | $8,800 | $8,800 | $105,600 |
| PROPERTY TAXES | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $66,000 | $0 | $0 | $66,000 |
| | $65,541 | $66,380 | $66,905 | $66,905 | $66,905 | $67,091 | $67,091 | $152,091 | $67,091 | $147,591 | $67,091 | $67,091 | $967,777 |
| **SECURED LENDER** | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $168,962 |
| **TOTAL OPERATING EXPENSES** | $79,621 | $80,460 | $80,985 | $80,985 | $80,985 | $81,171 | $81,171 | $166,171 | $81,171 | $161,671 | $81,171 | $81,171 | $1,136,738 |
| **OPERATING INCOME** | $13,833 | $12,994 | $12,469 | $12,469 | $12,469 | $13,778 | $17,824 | -$67,176 | $17,824 | -$62,676 | $17,824 | $17,824 | $19,451 |

Exhibit 1 - Page 2 of 3

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

Exhibit 1 - B. & J. Financial Projections

# B&J Property Investments Budget Forecast 2021

| | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| R.V. SPACE RENTS | $72,135 | $72,135 | $72,135 | $72,135 | $72,135 | $73,578 | $73,578 | $73,578 | $73,578 | $73,578 | $73,578 | $73,578 | $875,719 |
| SPACE ELECTRIC | $8,160 | $8,160 | $8,160 | $8,160 | $8,160 | $8,323 | $8,323 | $8,323 | $8,323 | $8,323 | $8,323 | $8,323 | $99,062 |
| MINI STORAGE RENTS | $18,375 | $18,375 | $18,375 | $18,375 | $18,375 | $18,743 | $18,743 | $18,743 | $18,743 | $18,743 | $18,743 | $18,743 | $223,073 |
| STORE INCOME | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $325 | $3,900 |
| | $98,995 | $98,995 | $98,995 | $98,995 | $98,995 | $100,968 | $100,968 | $100,968 | $100,968 | $100,968 | $100,968 | $100,968 | $1,201,754 |
| | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | |
| STORAGE RENT/DEP REFUND | $71 | $73 | $73 | $73 | $73 | $73 | $73 | $73 | $73 | $73 | $73 | $73 | $873 |
| RV RENT/DEP REFUND | $184 | $187 | $187 | $187 | $187 | $187 | $187 | $187 | $187 | $187 | $187 | $187 | $2,244 |
| SPACE ELECTRICITY | $9,486 | $9,486 | $9,486 | $9,486 | $9,486 | $9,676 | $9,676 | $9,676 | $9,676 | $9,676 | $9,676 | $9,676 | $115,160 |
| MISC | $565 | $576 | $576 | $576 | $576 | $576 | $576 | $576 | $576 | $576 | $576 | $576 | $6,900 |
| FACILITY ELECTRICITY | $616 | $628 | $628 | $628 | $628 | $628 | $628 | $628 | $628 | $628 | $628 | $628 | $7,525 |
| NW GAS | $336 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $4,110 |
| WATER/SEWER | $2,852 | $2,909 | $2,909 | $2,909 | $2,909 | $2,909 | $2,909 | $2,909 | $2,909 | $2,909 | $2,909 | $2,909 | $34,856 |
| CABLE TV | $3,197 | $3,261 | $3,261 | $3,261 | $3,261 | $3,261 | $3,261 | $3,261 | $3,261 | $3,261 | $3,261 | $3,261 | $39,069 |
| TELEPHONE | $408 | $416 | $416 | $416 | $416 | $416 | $416 | $416 | $416 | $416 | $416 | $416 | $4,986 |
| TELEPHONE AD | $304 | $310 | $310 | $310 | $310 | $310 | $310 | $310 | $310 | $310 | $310 | $310 | $3,718 |
| GARBAGE | $2,393 | $2,441 | $2,441 | $2,441 | $2,441 | $2,441 | $2,441 | $2,441 | $2,441 | $2,441 | $2,441 | $2,441 | $29,242 |
| OFFICE SUPPLY | $278 | $284 | $284 | $284 | $284 | $284 | $284 | $284 | $284 | $284 | $284 | $284 | $3,397 |
| SCREENINGS | $134 | $137 | $137 | $137 | $137 | $137 | $137 | $137 | $137 | $137 | $137 | $137 | $1,641 |
| MAINTENANCE | $1,144 | $1,167 | $1,167 | $1,167 | $1,167 | $1,167 | $1,167 | $1,167 | $1,167 | $1,167 | $1,167 | $1,167 | $13,976 |
| ADS | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $6 | $70 |
| FREIGHT/POSTAGE | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| RECREATION | $148 | $151 | $151 | $151 | $151 | $151 | $151 | $151 | $151 | $151 | $151 | $151 | $1,807 |
| STORE STOCK | $204 | $208 | $208 | $208 | $208 | $208 | $208 | $208 | $208 | $208 | $208 | $208 | $2,493 |
| MANAGEMENT FEES | $29,580 | $30,172 | $30,172 | $30,172 | $30,172 | $30,172 | $30,172 | $30,172 | $30,172 | $30,172 | $30,172 | $30,172 | $361,468 |
| MEDICAL | $4,028 | $4,028 | $4,632 | $4,632 | $4,632 | $4,632 | $4,632 | $4,632 | $4,632 | $4,632 | $4,632 | $4,632 | $54,378 |
| AUTO | $357 | $364 | $364 | $364 | $364 | $364 | $364 | $364 | $364 | $364 | $364 | $364 | $4,363 |
| LEGAL/ACCOUNTING | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $24,000 |
| INSURANCE | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $15,000 | $0 | $0 | $15,000 |
| CAPITAL IMPROVEMENTS | $0 | $0 | $0 | $0 | $20,000 | $0 | $0 | $90,000 | $0 | $0 | $0 | $0 | $110,000 |
| CONTINGENCY FUND | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 | $110,400 |
| PROPERTY TAXES | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $67,980 | $0 | $0 | $67,980 |
| | $67,491 | $68,347 | $68,951 | $68,951 | $88,951 | $69,141 | $69,141 | $159,141 | $69,141 | $152,121 | $69,141 | $69,141 | $1,019,654 |
| | | | | | | | | | | | | | |
| **SECURED LENDER** | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $14,080 | $168,962 |
| | | | | | | | | | | | | | |
| **TOTAL OPERATING EXPENSES** | $81,571 | $82,427 | $83,031 | $83,031 | $103,031 | $83,221 | $83,221 | $173,221 | $83,221 | $166,201 | $83,221 | $83,221 | $1,188,616 |
| | | | | | | | | | | | | | |
| **OPERATING INCOME** | $17,424 | $16,568 | $15,964 | $15,964 | -$4,036 | $17,748 | $17,748 | -$72,252 | $17,748 | -$65,232 | $17,748 | $17,748 | $13,138 |

Exhibit 1 - Page 3 of 3

# EXHIBIT 2

## BERMAN PROJECTED
## DISPOSABLE INCOME CALCULATION

Exhibit 2 - Berman Projected Disposable Income Calculation

| Fill in this information to identify your case: |
| --- |

Debtor 1 __William John Berman__

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: __District of Oregon__

Case number __19-60230-pcm11__
(if known)

| Check as directed in lines 17 and 21: |
| --- |

According to the calculations required by this Statement:

☐ 1. Disposable income is not determined under 11 U.S.C. § 1325(b)(3).

☑ 2. Disposable income is determined under 11 U.S.C. § 1325(b)(3).

☐ 3. The commitment period is 3 years.

☑ 4. The commitment period is 5 years.

☐ Check if this is an amended filing

## Official Form 122C-1
# Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

**Part 1:** Calculate Your Average Monthly Income

1. **What is your marital and filing status?** Check one only.
   ☐ **Not married**. Fill out Column A, lines 2-11.
   ☑ **Married**. Fill out both Columns A and B, lines 2-11.

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
| --- | --- | --- |
| 2. **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 6,400.00 | $ 6,400.00 |
| 3. **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ 0.00 |
| 4. **All amounts from any source which are regularly paid for household expenses of you and your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Do not include payments from a spouse. Do not include payments you listed on line 3. | $ 0.00 | $ 0.00 |

5. **Net income from operating a business, profession, or farm**
| Debtor 1 | | |
| --- | --- | --- |
| Gross receipts (before all deductions) | $ 0.00 | |
| Ordinary and necessary operating expenses | -$ 0.00 | |
| Net monthly income from a business, profession, or farm | $ 0.00 Copy here -> | $ 0.00 | $ 0.00 |

6. **Net income from rental and other real property**
| Debtor 1 | | |
| --- | --- | --- |
| Gross receipts (before all deductions) | $ 0.00 | |
| Ordinary and necessary operating expenses | -$ 0.00 | |
| Net monthly income from rental or other real property | $ 0.00 Copy here -> | $ 0.00 | $ 0.00 |

Exhibit 2 - Berman Projected Disposable Income Calculation

Debtor 1    **William John Berman**            Case number (*if known*)    **19-60230-pcm11**

|  | | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 7. | **Interest, dividends, and royalties** | $ 0.00 | $ 0.00 |
| 8. | **Unemployment compensation** | $ 0.00 | $ 0.00 |
| | Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here: | | |
| | For you    $ 0.00 | | |
| | For your spouse    $ 0.00 | | |
| 9. | **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. | $ 0.00 | $ 0.00 |
| 10. | **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism. If necessary, list other sources on a separate page and put the total below. | | |
| |     **Air Force Separation Pay** | $ 1,243.00 | $ 0.00 |
| | | $ 0.00 | $ 0.00 |
| | Total amounts from separate pages, if any.   + | $ 0.00 | $ 0.00 |
| 11. | **Calculate your total average monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B. | $ 7,643.00  +  $ 6,400.00  =  $ 14,043.00<br>**Total average monthly income** | |

**Part 2:**    Determine How to Measure Your Deductions from Income

12. **Copy your total average monthly income from line 11.** ...............................................    $ 14,043.00

13. **Calculate the marital adjustment.** Check one:

☐   You are not married. Fill in 0 below.

☐   You are married and your spouse is filing with you. Fill in 0 below.

■   You are married and your spouse is not filing with you.

    Fill in the amount of the income listed in line 11, Column B, that was NOT regularly paid for the household expenses of you or your dependents, such as payment of the spouse's tax liability or the spouse's support of someone other than you or your dependents.

    Below, specify the basis for excluding this income and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page.

    If this adjustment does not apply, enter 0 below.

| | | |
|---|---|---|
| **Non-filing spouse's expenses, retirement, insurance, health svgs, debt pmts** | $ 1,800.00 | |
| | $ | |
| | $ | |
| Total | $ 1,800.00 | Copy here=>    -    1,800.00 |

14. **Your current monthly income.** Subtract line 13 from line 12.            $ 12,243.00

15. **Calculate your current monthly income for the year.** Follow these steps:

   15a.   Copy line 14 here=> ..............................................................    $ 12,243.00

        Multiply line 15a by 12 (the number of months in a year).    **x 12**

   15b.   The result is your current monthly income for the year for this part of the form. .........................................    $ 146,916.00

Official Form 122C-1     **Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period**     page 2

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                               Best Case Bankruptcy

Exhibit 2, Page 2 of 10

Case 19-60138-pcm11     Doc 246     Filed 10/09/19

## Exhibit 2 - Berman Projected Disposable Income Calculation

Debtor 1 **William John Berman**   Case number (*if known*)   **19-60230-pcm11**

16. **Calculate the median family income that applies to you.** Follow these steps:

16a. Fill in the state in which you live.                    **OR**

16b. Fill in the number of people in your household.          **2**

16c. Fill in the median family income for your state and size of household.        $   **66,745.00**

To find a list of applicable median income amounts, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

17. **How do the lines compare?**

17a. ☐  Line 15b is less than or equal to line 16c. On the top of page 1 of this form, check box 1, *Disposable income is not determined under 11 U.S.C. § 1325(b)(3)*. **Go to Part 3.** Do NOT fill out *Calculation of Your Disposable Income* (Official Form 122C-2).

17b. ■  Line 15b is more than line 16c. On the top of page 1 of this form, check box 2, *Disposable income is determined under 11 U.S.C. § 1325(b)(3)*. **Go to Part 3 and fill out Calculation of Your Disposable Income (Official Form 122C-2).** On line 39 of that form, copy your current monthly income from line 14 above.

| **Part 3:** | **Calculate Your Commitment Period Under 11 U.S.C. § 1325(b)(4)** |
|---|---|

18. **Copy your total average monthly income from line 11** .                      $   **14,043.00**

19. **Deduct the marital adjustment if it applies.** If you are married, your spouse is not filing with you, and you contend that calculating the commitment period under 11 U.S.C. § 1325(b)(4) allows you to deduct part of your spouse's income, copy the amount from line 13.

19a. If the marital adjustment does not apply, fill in 0 on line 19a.          -$   **1,800.00**

19b. Subtract line 19a from line 18.                               $   **12,243.00**

20. **Calculate your current monthly income for the year.**  Follow these steps:

20a. Copy line 19b                                         $   **12,243.00**

Multiply by 12 (the number of months in a year).                  **x 12**

20b. The result is your current monthly income for the year for this part of the form     $   **146,916.00**

20c. Copy the median family income for your state and size of household from line 16c   $   **66,745.00**

21. **How do the lines compare?**

☐  Line 20b is less than line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 3, *The commitment period is 3 years*. Go to Part 4.

■  Line 20b is more than or equal to line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 4, *The commitment period is 5 years*. Go to Part 4.

Exhibit 2, Page 3 of 10

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

Exhibit 2 - Berman Projected Disposable Income Calculation

**Fill in this information to identify your case:**

Debtor 1    **William John Berman**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Oregon

Case number   **19-60230-pcm11**
(if known)

☐ Check if this is an amended filing

Official Form 122C-2
# Chapter 13 Calculation of Your Disposable Income
04/16

To fill out this form, you will need your completed copy of *Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period* (Official Form 122C-1).

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form, Include the line number to which additional information applies. On the top any additional pages, write your name and case number (if known).

**Part 1:**    Calculate Your Deductions from Your Income

The Internal Revenue Service (IRS) issues National and Local Standards for certain expense amounts. Use these amounts to answer the questions in lines 6-15. To find the IRS standards, go online using the link specified in the separate instructions for this form. This information may also be available at the bankruptcy clerk's office.

Deduct the expense amounts set out in lines 6-15 regardless of your actual expense. In later parts of the form, you will use some of your actual expenses if they are higher than the standards. Do not include any operating expenses that you subtracted from income in lines 5 and 6 of Form 122C−1, and do not deduct any amounts that you subtracted from your spouse's income in line 13 of Form 122C−1.

If your expenses differ from month to month, enter the average expense.

Note: Line numbers 1-4 are not used in this form. These numbers apply to information required by a similar form used in chapter 7 cases.

5.    **The number of people used in determining your deductions from income**

Fill in the number of people who could be claimed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support. This number may be different from the number of people in your household.    **2**

**National Standards**      You must use the IRS National Standards to answer the questions in lines 6-7.

6.    **Food, clothing, and other items:** Using the number of people you entered in line 5 and the IRS National Standards, fill in the dollar amount for food, clothing, and other items.    $    **1,202.00**

7.    **Out-of-pocket health care allowance:** Using the number of people you entered in line 5 and the IRS National Standards, fill in the dollar amount for out-of-pocket health care. The number of people is split into two categories--people who are under 65 and people who are 65 or older--because older people have a higher IRS allowance for health car costs. If your actual expenses are higher than this IRS amount, you may deduct the additional amount on line 22.

Exhibit 2 - Berman Projected Disposable Income Calculation

Debtor 1    **William John Berman**            Case number (*if known*)    **19-60230-pcm11**

| **People who are under 65 years of age** | | | | | |
|---|---|---|---|---|---|
| 7a. | Out-of-pocket health care allowance per person | $ | **52** | | |
| 7b. | Number of people who are under 65 | X | **2** | | |
| 7c. | **Subtotal.** Multiply line 7a by line 7b. | $ | **104.00** | Copy here=> $ | **104.00** |

| **People who are 65 years of age or older** | | | | | |
|---|---|---|---|---|---|
| 7d. | Out-of-pocket health care allowance per person | $ | **114** | | |
| 7e. | Number of people who are 65 or older | X | **0** | | |
| 7f. | Subtotal. Multiply line 7d by line 7e. | $ | **0.00** | Copy here=> $ | **0.00** |

| | | | | |
|---|---|---|---|---|
| 7g. | **Total.** Add line 7c and line 7f | $ **104.00** | Copy total here=> $ | **104.00** |

**Local Standards**     You must use the IRS Local Standards to answer the questions in lines 8-15.

Based on information from the IRS, the U.S. Trustee Program has divided the IRS Local Standard for housing for bankruptcy purposes into two parts:

■ Housing and utilities - Insurance and operating expenses

■ Housing and utilities - Mortgage or rent expenses

To answer the questions in lines 8-9, use the U.S. Trustee Program chart. To find the chart, go online using the link specified in the separate instructions for this form. This chart may also be available at the bankruptcy clerk's office.

8.    **Housing and utilities - Insurance and operating expenses:** Using the number of people you entered in line 5, fill in the dollar amount listed for your county for insurance and operating expenses.     $     **551.00**

9.    **Housing and utilities - Mortgage or rent expenses:**

    9a.    Using the number of people you entered in line 5, fill in the dollar amount listed for your county for mortgage or rent expenses.     $     **1,202.00**

    9b.    Total average monthly payment for all mortgages and other debts secured by your home.

       To calculate the total average monthly payment, add all amounts that are contractually due to each secured creditor in the 60 months after you file for bankruptcy. Next divide by 60.

| Name of the creditor | Average monthly payment | | |
|---|---|---|---|
| **Quicken Loans Inc.** | $ **2,850.00** | | |
| 9b. Total average monthly payment | $ **2,850.00** | Copy here=> -$ **2,850.00** | Repeat this amount on line 33a. |

    9c.    Net mortgage or rent expense.

       Subtract line 9b (*total average monthly payment*) from line 9a (*mortgage or rent expense*). If this number is less than $0, enter $0.     $ **0.00**    Copy here=> $ **0.00**

10.   **If you claim that the U.S. Trustee Program's division of the IRS Local Standard for housing is incorrect and affects the calculation of your monthly expenses, fill in any additional amount you claim.**     $ **0.00**

     Explain why: _____

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

## Exhibit 2 - Berman Projected Disposable Income Calculation

Debtor 1   **William John Berman**                                        Case number (*if known*)   **19-60230-pcm11**

---

11.   **Local transportation expenses:** Check the number of vehicles for which you claim an ownership or operating expense.

☐ 0. Go to line 14.

☐ 1. Go to line 12.

■ 2 or more. Go to line 12.

12.   **Vehicle operation expense:** Using the IRS Local Standards and the number of vehicles for which you claim the operating expenses, fill in the *Operating Costs* that apply for your Census region or metropolitan statistical area.        $        **436.00**

13.   **Vehicle ownership or lease expense:** Using the IRS Local Standards, calculate the net ownership or lease expense for each vehicle below. You may not claim the expense if you do not make any loan or lease payments on the vehicle.  In addition, you may not claim the expense for more than two vehicles.

**Vehicle 1     Describe Vehicle 1:** _____

13a. Ownership or leasing costs using IRS Local Standard.................................................        $        0.00

13b. Average monthly payment for all debts secured by Vehicle 1.

Do not include costs for leased vehicles.

To calculate the average monthly payment here and on line 13e, add all amounts that are contractually due to each secured creditor in the 60 months after you file for bankruptcy. Then divide by 60.

| Name of each creditor for Vehicle 1 | Average monthly payment |
|---|---|
| **-NONE-** | $ |
| Total Average Monthly Payment $    0.00 | |

Copy here =>  -$        0.00        Repeat this amount on line 33b.

13c. Net Vehicle 1 ownership or lease expense

Subtract line 13b from line 13a. if the numbert is less than $0, enter $0.  ...................        $        0.00        Copy net Vehicle 1 expense here =>  $        0.00

**Vehicle 2     Describe Vehicle 2:** _____

13d. Ownership or leasing costs using IRS Local Standard.................................................        $        0.00

13e. Average monthly payment for all debts secured by Vehicle 2. Do not include costs for leased vehicles.

| Name of each creditor for Vehicle 2 | Average monthly payment |
|---|---|
| **-NONE-** | $ |
| Total average monthly payment $    0.00 | |

Copy here =>  -$        0.00        Repeat this amount on line 33c.

13f. Net Vehicle 2 ownership or lease expense

Subtract line 13e from line 13d. if this number is less than $0, enter $0.  ....................        $        0.00        Copy net Vehicle 2 expense here =>  $        0.00

14.   **Public transportation expense: If you claimed 0 vehicles in line 11, using the IRS Local Standards, fill in the *Public Transportation* expense allowance regardless of whether you use public transportation.**        $        0.00

15.   **Additional public transportation expense:** If you claimed 1 or more vehicles in line 11 and if you claim that you may also deduct a public transportation expense, you may fill in what you believe is the appropriate expense, but you may not claim more than the IRS Local Standard for *Public Transportation.*        $        0.00

---

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

**Exhibit 2 - Berman Projected Disposable Income Calculation**

| Debtor 1 | **William John Berman** | Case number (if known) | **19-60230-pcm11** |
|---|---|---|---|

| **Other Necessary Expenses** | In addition to the expense deductions listed above, you are allowed your monthly expenses for the following IRS categories. |
|---|---|

16. **Taxes:** The total monthly amount that you will actually pay for federal, state and local taxes, such as income taxes, self-employment taxes, social security taxes, and Medicare taxes. You may include the monthly amount withheld from your pay for these taxes. However, if you expect to receive a tax refund, you must divide the expected refund by 12 and subtract that number from the total monthly amount that is withheld to pay for taxes.
Do not include real estate, sales, or use taxes. $ **2,800.00**

17. **Involuntary deductions:** The total monthly payroll deductions that your job requires, such as retirement contributions, union dues, and uniform costs.
Do not include amounts that are not required by your job, such as voluntary 401(k) contributions or payroll savings. $ **0.00**

18. **Life Insurance:** The total monthly premiums that you pay for your own term life insurance. If two married people are filing together, include payments that you make for your spouse's term life insurance.
Do not include premiums for life insurance on your dependents, for a non-filing spouse's life insurance, or for any form of life insurance other than term. $ **500.00**

19. **Court-ordered payments:** The total monthly amount that you pay as required by the order of a court or administrative agency, such as spousal or child support payments.
Do not include payments on past due obligations for spousal or child support. You will list these obligations in line 35. $ **0.00**

20. **Education:** The total monthly amount that you pay for education that is either required:
■ as a condition for your job, or
■ for your physically or mentally challenged dependent child if no public education is available for similar services. $ **0.00**

21. **Childcare:** The total monthly amount that you pay for childcare, such as babysitting, daycare, nursery, and preschool.
Do not include payments for any elementary or secondary school education. $ **0.00**

22. **Additional health care expenses, excluding insurance costs:** The monthly amount that you pay for health care that is required for the health and welfare of you or your dependents and that is not reimbursed by insurance or paid by a health savings account. Include only the amount that is more than the total entered in line 7.
Payments for health insurance or health savings accounts should be listed only in line 25. $ **296.00**

23. **Optional telephone and telephone services:** The total monthly amount that you pay for telecommunication services for you and your dependents, such as pagers, call waiting, caller identification, special long distance, or business cell phone service, to the extent necessary for your health and welfare or that of your dependents or for the production of income, if it is not reimbursed by your employer.
Do not include payments for basic home telephone, internet and cell phone service. Do not include self-employment expenses, such as those reported on line 5 of Official Form 122C-1, or any amount you previously deducted. +$ **330.00**

24. **Add all of the expenses allowed under the IRS expense allowances.**
Add lines 6 through 23. $ **6,219.00**

| **Additional Expense Deductions** | These are additional deductions allowed by the Means Test. |
|---|---|

*Note*: Do not include any expense allowances listed in lines 6-24.

25. **Health insurance, disability insurance, and health savings account expenses.** The monthly expenses for health insurance, disability insurance, and health savings accounts that are reasonably necessary for yourself, your spouse, or your dependents.

| | | |
|---|---|---|
| Health insurance | $ **0.00** | |
| Disability insurance | $ **0.00** | |
| Health savings account | + $ **500.00** | |
| Total | $ **500.00** | Copy total here=> $ **500.00** |

Do you actually spend this total amount?
☐ No. How much do you actually spend? $ _____
■ Yes

26. **Continued contributions to the care of household or family members.** The actual monthly expenses that you will continue to pay for the reasonable and necessary care and support of an elderly, chronically ill, or disabled member of your household or member of your immediate family who is unable to pay for such expenses. These expenses may include contributions to an account of a qualified ABLE program. 26 U.S.C. § 529A(b). $ **0.00**

27. **Protection against family violence.** The reasonably necessary monthly expenses that you incur to maintain the safety of you and your family under the Family Violence Prevention and Services Act or other federal laws that apply.
By law, the court must keep the nature of these expenses confidential. $ **0.00**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com — Best Case Bankruptcy

Exhibit 2, Page 7 of 10

Case 19-60138-pcm11   Doc 246   Filed 10/09/19

Exhibit 2 - Berman Projected Disposable Income Calculation

Debtor 1    **William John Berman**      Case number (*if known*)   **19-60230-pcm11**

28. **Additional home energy costs.** Your home energy costs are included in your insurance and operating expenses on line 8.

If you believe that you have home energy costs that are more than the home energy costs included in expenses on line 8, then fill in the excess amount of home energy costs.

You must give your case trustee documentation of your actual expenses, and you must show that the additional amount claimed is reasonable and necessary.    $   **0.00**

29. **Education expenses for dependent children who are younger than 18.** The monthly expenses (not more than $160.42* per child) that you pay for your dependent children who are younger than 18 years old to attend a private or public elementary or secondary school.

You must give your case trustee documentation of your actual expenses, and you must explain why the amount claimed is reasonable and necessary and not already accounted for in lines 6-23.

* Subject to adjustment on 4/01/19, and every 3 years after that for cases begun on or after the date of adjustment.    $   **0.00**

30. **Additional food and clothing expense.** The monthly amount by which your actual food and clothing expenses are higher than the combined food and clothing allowances in the IRS National Standards. That amount cannot be more than 5% of the food and clothing allowances in the IRS National Standards.

To find a chart showing the maximum additional allowance, go online using the link specified in the separate instructions for this form. This chart may also be available at the bankruptcy clerk's office.

You must show that the additional amount claimed is reasonable and necessary.    $   **39.00**

31. **Continuing charitable contributions.** The amount that you will continue to contribute in the form of cash or financial instruments to a religious or charitable organization. 11 U.S.C. § 548(d)(3) and (4).

Do not include any amount more than 15% of your gross monthly income.    $   **0.00**

32. **Add all of the additional expense deductions.**
Add lines 25 through 31.    $   **539.00**

**Deductions for Debt Payment**

33. **For debts that are secured by an interest in property that you own, including home mortgages, vehicle loans, and other secured debt, fill in lines 33a through 33e.**

To calculate the total average monthly payment, add all amounts that are contractually due to each secured creditor in the 60 months after you file for bankruptcy. Then divide by 60.

     **Mortgages on your home**          **Average monthly payment**

33a. Copy line 9b here    => $   **2,850.00**

     **Loans on your first two vehicles**

33b. Copy line 13b here    => $   **0.00**

33c. Copy line 13e here    => $   **0.00**

33d. List other secured debts

| Name of each creditor for other secured debt | Identify property that secures the debt | Does payment include taxes or insurance? | |
|---|---|---|---|
| **-NONE-** | | ☐ No ☐ Yes | $ |
| | | ☐ No ☐ Yes | $ |
| | | ☐ No ☐ Yes   + | $ |

33e. Total average monthly payment. Add lines 33a through 33d    $ **2,850.00**   Copy total here=> $ **2,850.00**

Exhibit 2 - Berman Projected Disposable Income Calculation

Debtor 1    **William John Berman**      Case number (*if known*)   **19-60230-pcm11**

**34. Are any debts that you listed in line 33 secured by your primary residence, a vehicle, or other property necessary for your support or the support of your dependents?**

■ No.   Go to line 35.
☐ Yes.   State any amount that you must pay to a creditor, in addition to the payments listed in line 33, to keep possession of your property (called the *cure amount*). Next, divide by 60 and fill in the information below.

| Name of the creditor | Identify property that secures the debt | Total cure amount | Monthly cure amount |
|---|---|---|---|
| **-NONE-** | | $ | ÷ 60 = $ |

Total $ **0.00**   Copy total here=> $ **0.00**

**35. Do you owe any priority claims - such as a priority tax, child support, or alimony - that are past due as of the filing date of your bankruptcy case?** 11 U.S.C. § 507.

■ No.   Go to line 36.
☐ Yes.   Fill in the total amount of all of these priority claims. Do not include current or ongoing priority claims, such as those you listed in line 19.

Total amount of all past-due priority claims ............. $ **0.00**   ÷ 60   $ **0.00**

**36. Projected monthly Chapter 13 plan payment**   $ _____

Current multiplier for your district as stated on the list issued by the Administrative Office of the United States Courts (for districts in Alabama and North Carolina) or by the Executive Office for United States Trustees (for all other districts).   X _____
To find a list of district multipliers that includes your district, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

Average monthly administrative expense   $ _____   Copy total here=>

**37. Add all of the deductions for debt payment.**    $ **2,850.00**
Add lines 33e through 36.

**Total Deductions from Income**

**38. Add all of the allowed deductions.**

Copy line 24, *All of the expenses allowed under IRS expense allowances*   $ **6,219.00**
Copy line 32, *All of the additional expense deductions*   $ **539.00**
Copy line 37, *All of the deductions for debt payment*   +$ **2,850.00**

Total deductions................. $ **9,608.00**   Copy total here=>   $ **9,608.00**

# Exhibit 2 - Berman Projected Disposable Income Calculation

Debtor 1    **William John Berman**        Case number (*if known*)    **19-60230-pcm11**

**Part 2:**    **Determine Your Disposable Income Under 11 U.S.C. § 1325(b)(2)**

39. **Copy your total current monthly income from line 14 of Form 122C-1,** *Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period.*    $    **12,243.00**

40. **Fill in any reasonably necessary income you receive for support for dependent children.** The monthly average of any child support payments, foster care payments, or disability payments for a dependent child, reported in Part I of Form 122C-1, that you received in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child.    $    **0.00**

41. **Fill in all qualified retirement deductions.** The monthly total of all amounts that your employer withheld from wages as contributions for qualified retirement plans, as specified in 11 U.S.C. § 541(b)(7) plus all required repayments of loans from retirement plans, as specified in 11 U.S.C. § 362(b)(19).    $    **400.00**

42. **Total of all deductions allowed under 11 U.S.C. § 707(b)(2)(A).** Copy line 38 here  =>  $    **9,608.00**

43. **Deduction for special circumstances.** If special circumstances justify additional expenses and you have no reasonable alternative, describe the special circumstances and their expenses. You must give your case trustee a detailed explanation of the special circumstances and documentation for the expenses.

| Describe the special circumstances | Amount of expense |
|---|---|
| **Non-Filing Spouse's Expenses and Debt Payments** | $   **500.00** |
|  | $ |
|  | $ |

Total   $   **500.00**    Copy here=> $   **500.00**

44. **Total adjustments.** Add lines 40 through 43  =>  $   **10,508.00**    Copy here=> -$   **10,508.00**

45. **Calculate your monthly disposable income under § 1325(b)(2).** Subtract line 44 from line 39.    $   **1,735.00**

**Part 3:**    **Change in Income or Expenses**

46. **Change in income or expenses.** If the income in Form 122C-1 or the expenses you reported in this form have changed or are virtually certain to change after the date you filed your bankruptcy petition and during the time your case will be open, fill in the information below. For example, if the wages reported increased after you filed your petition, check 122C-1 in the first column, enter line 2 in the second column, explain why the wages increased, fill in when the increase occurred, and fill in the amount of the increase.

| Form | Line | Reason for change | Date of change | Increase or decrease? | Amount of change |
|---|---|---|---|---|---|
| ■ 122C-1<br>☐ 122C-2 | 10 | **Air Force Separation Benefits will end in November 2020. Monthly amount listed on Line 10 will cease after the equivalent of 24 months' worth is received by the Debtor, leaving 36 months in which the income should be excluded.** | 10/1/2021 | ☐ Increase<br>■ Decrease | $   **1,243.00** |
| ☐ 122C-1<br>☐ 122C-2 |  |  |  | ☐ Increase<br>☐ Decrease | $ |
| ☐ 122C-1<br>☐ 122C-2 |  |  |  | ☐ Increase<br>☐ Decrease | $ |
| ☐ 122C-1<br>☐ 122C-2 |  |  |  | ☐ Increase<br>☐ Decrease | $ |

Exhibit 2, Page 10 of 10

Case 19-60138-pcm11    Doc 246    Filed 10/09/19

# EXHIBIT 3

## BERMAN LIQUIDATION ANALYSIS

In re: B. J. Property Investments, Inc., Bankr. Case No. 19-60138-pcm11; and

In re: William John Berman, Bankr. Case No. 19-60230-pcm11 (Jointly Administered)

## Exhibit 3: Berman Liquidation Analysis

Itemized below are any *changes* to the most recent bankruptcy Schedules A&B, attached/at docket # →→→→ **44**

| Schedule A/B item | Amount | A/B item | Amount |
|---|---|---|---|
| **1. Total from bankruptcy Schedule A:** | $ 568,060.00 | A/B.28. Tax Refunds | $ - |
| Less: Anticipated Cost of Sale: | $ (45,444.80) | A/B.29. Family Support | $ - |
| Less: Quicken Loans: | $ (319,560.00) | A/B.30. Amounts Owed to You | $ - |
| Less: Debra Berman 50% Interest | $ (101,527.60) | A/B.31. Insurance Policies (Cash Value) | $ 72,288.00 |
| | | A/B.32. Inheritance Interests | $ - |
| | $ - | A/B.33. Claims Against Third-Parties | $ - |
| **2.Adjusted total, Schedule A property** | $ 101,527.60 | A/B.34. Other Claims | $ - |
| **3. Total from bankruptcy Schedule B** | $ - | A/B.35. Other Financial Assets (specify): | $ - |
| A/B.3. Vehicles | $ - | William Lloyd Developments, Inc. / Debra Berman | $ 107,690.33 |
| A/B.4. Watercraft | $ - | A/B.53. Other Property of Any Kind (specify): | |
| A/B.6. Household goods and furnishings | $ 2,450.00 | Lawn equipment | $ 100.00 |
| A/B.7. Electronics | $ 500.00 | Hand tools | $ 200.00 |
| A/B.8. Collectibles | $ 400.00 | **4.Adjusted total, Sch. B property** | $ 560,211.44 |
| A/B.9. Equipment for Sports/Hobbies | $ 150.00 | **5. Other (e.g., avoidance actions-itemize)** | $ 10,870.29 |
| A/B.10. Firearms | $ - | **6. Total Assets (In.2+4+5)** | $ 672,609.33 |
| A/B.11. Clothes | $ 500.00 | **7. Claims Senior to General Unsecured Claims** | |
| A/B.12. Jewelry | $ 200.00 | 7a. Secured claims (after bifurcation) | $ - |
| A/B.13. Non-farm Animals | $ - | 7b. Chapter 7: trustee fees (from sidebar) | $ 14,181.54 |
| A/B.14. Other Personal and Household Items | $ - | 7c. Chapter 7: other costs of administration | $ - |
| A/B.16. Cash | $ 200.00 | 7d. Chapter 11: unpaid professionals' fees | $ 50,000.00 |
| A/B.17. Checking Account | $ 35,937.53 | 7e. Chapter 11: other administrative costs | $ - |
| A/B.18. Stocks (Publicly Traded), Bonds, Etc. | $ - | 7f. Priority claims (bankruptcy Schedule E) | $ - |
| A/B.19. Closely Held Business Interests | $ - | 7g. Debtor's exemptions (bankr. Sch.C) | $ 453,978.58 |
| A/B.20. Gov. and Corp. Bonds | $ - | 7h. Other/adjustments (See Notes on valuation) | $ - |
| A/B.21. Retirement Accounts | $ 309,775.58 | **8. Total Senior Claims (In. 7a to 7h)** | $ 518,160.12 |
| A/B.22. Security Deposits | $ - | **9. Net available for unsecured (In.6-In.8)** | $ 154,449.21 |
| A/B.23. Annuities | $ 29,820.00 | 10a.Gen. unsecured claims from schedule F | $ 2,527,208.63 |
| A/B.24. Tuition Programs, Education IRAs | $ - | 10b.Other gen. unsecured claims (if any) | $ 4,864,951.00 |
| A/B.25. Trusts | $ - | **11.Total gen. unsecured (In.10a+10b)** | $ 7,392,159.63 |
| A/B.26. Patents, copyrights, other IP | $ - | **12. Ch. 7 Estimated Dividend (In.9/In.11)** | 2.1% |
| A/B.27. Licenses, Franchises, Other Intang. | $ - | **13. Plan Dividend (Classes 5 and 7)** | $ 160,000.00 |

**Notes on valuation:** Subject to any court order or attached continuation sheet:
(1) Real estate valuation assumes 8% costs of sale.
(2) "Avoidance action" on Line No. 5 is Debtor's share of funds contributed to grandchildren.

### Hypothetical chapter 7 trustee fees

| | |
|---|---|
| $ 672,609.33 | Total disbursements |
| $ (453,978.58) | Minus exemptions |
| $ - | Minus adjustments* |
| $ 218,630.75 | = Net disbursements |

**§ 326 calculations**

| | | | |
|---|---|---|---|
| $ 5,000.00 | X 25%= | $ | 1,250.00 |
| $ 45,000.00 | X 10%= | $ | 4,500.00 |
| $ 168,630.75 | X 5%= | $ | 8,431.54 |
| $ - | X 3%= | $ | - |
| $ 218,630.75 | Totals | $ | 14,181.54 |
| | Adjustment (if any) | $ | - |
| | Trustee Fee | $ | 14,181.54 |

*Adjustments would include, *e.g.,* estimated refunds, and non-estate funds/ assets returned to third parties.

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT (OCTOBER 8, 2019)** was served on the parties indicated as "ECF" on the attached List of Interested Parties by electronic means through the Court's Case Management/Electronic Case File system on the date set forth below.

In addition, the parties indicated as "Non-ECF" on the attached List of Interested Parties were served by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to each party's last-known address and depositing in the U.S. mail at Portland, Oregon on the date set forth below.

DATED this 8th day of October, 2019.

TONKON TORP LLP


By /s/ Timothy J. Conway
    Timothy J. Conway, OSB No. 851752
    Ava L. Schoen, OSB No. 044072
    Attorneys for B. & J. Property Investments, Inc.

**Page 1 of 1** -   CERTIFICATE OF SERVICE

# CONSOLIDATED LIST OF INTERESTED PARTIES

### *In re B. & J. Property Investments, Inc.*
U.S. Bankruptcy Court Case No. 19-60138-pcm11

### *In re William J. Berman*
U.S. Bankruptcy Court Case No. 19-60230-pcm11

## ECF PARTICIPANTS

- TIMOTHY J CONWAY    tim.conway@tonkon.com, candace.duncan@tonkon.com, spencer.fisher@tonkon.com
- NICHOLAS J HENDERSON    nhenderson@portlaw.com, tsexton@portlaw.com; mperry@portlaw.com; hendersonnr86571@notify.bestcase.com
- KEITH D KARNES    kkarnes@keithkarnes.com, kkarnesnotices@gmail.com; patricia@keithkarnes.com; 9982680420@filings.docketbird.com;r51870@notify.bestcase.com
- SHANNON R MARTINEZ    smartinez@sglaw.com, scurtis@sglaw.com
- ERICH M PAETSCH    epaetsch@sglaw.com, ktate@sglaw.com
- TERESA H PEARSON    teresa.pearson@millernash.com, MNGD-2823@millernash.com
- AVA L SCHOEN    ava.schoen@tonkon.com, leslie.hurd@tonkon.com
- TROY SEXTON    tsexton@portlaw.com, nhenderson@portlaw.com,mperry@portlaw.com,troy-sexton-4772@ecf.pacerpro.com
- TOBIAS TINGLEAF    toby@shermlaw.com, darlene@shermlaw.com
- US TRUSTEE, Eugene    USTPRegion18.EG.ECF@usdoj.gov

## NON-ECF PARTICIPANTS

**B. & J. TOP 20 UNSECURED CREDITORS**

Class Action Plaintiffs
c/o Brady Mertz
Brady Mertz PC
345 Lincoln St.
Salem, OR 97302

Portland General Electric
POB 4438
Portland, OR 97208

Judson's Plumbing
POB 12669
Salem, OR 97330

City of Salem
555 Liberty St. SE, Room 230
Salem, OR 97301

Comcast Business
POB 34744
Seattle, WA 98124-1744

Pacific Source
POB 7068
Springfield, OR 97475-0068

Pacific Sanitation
POB 17669
Salem, OR 97305

US Bank
POB 6352
Fargo, ND 58125-6352

Miller Paint
390 Lancaster Dr. NE
Salem, OR 97301

HotSuff Spas & Pool
1840 Lancaster Dr. NE
Salem, OR 97305

NW Natural Gas
POB 6017
Portland, OR 97228-6017

Chateau Locks
1820 47th Terrace East
Bradenton, FL 34203-3773

Century Link
Bankruptcy Dept.
600 New Century Parkway
New Century, KS  66031

Walter Nelson Company
1270 Commercial St. NE
Salem, OR 97301

Statesman Journal
340 Vista Ave. SE
Salem, OR 97302

Pacific Screening
POB 25582
Portland, OR 97298

DEX Media
Dex Media Attn: Client Care
1615 Bluff City Highway
Bristol, TN 37620

AllAmerican Insurance
POB 758554
Topeka, KS 66675-8554

US Bank
POB 6352
Fargo, ND  58125

Saalfeld Griggs PC
Attn: Hunter Emerick
Park Place, Suite 200
250 Church St. SE
Salem, OR 97301

Susan Stoehr
24310 S Hwy 99E, Space G
Canby, OR  97013

Stephen Joye
Fischer, Hayes, et al.
3295 Triangle Dr SE #200
Salem, OR 97302

Nancy Wolf
2008 SE Sturdevant Rd
Toledo, OR 97391

**BERMAN SECURED CREDITOR**

Quicken Loans Inc.
635 Woodward Ave.
Detroit, MI 48226

**BERMAN TOP 20 UNSECURED CREDITORS**

Class Action Plaintiffs
c/o Brady Mertz
Brady Mertz PC
345 Lincoln St.
Salem, OR 97302

Saalfeld Griggs PC
Attn: Hunter Emerick
Park Place, Suite 200
250 Church St. SE
Salem, OR 97301

Heather Noble
4490 Silverton Rd NE #4
Salem, OR 97305-2060